**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **DAVID LEE,** | : | **CASE NO. 13-CV-222** |
| | : | |
| *Plaintiff,* | : | |
| | : | **JUDGE THOMAS M. ROSE** |
| **vs.** | : | |
| | : | **MAGISTRATE JUDGE** |
| **THE CITY OF MORAINE FIRE** | : | **SHARON L. OVINGTON** |
| **DEPARTMENT,** *et al.*, | : | |
| | : | |
| *Defendants.* | : | |

---

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Pursuant to Federal Rule of Civil Procedure 56(a), Plaintiff David Lee respectfully moves for summary judgment on three of his four causes of action. There are no genuine issues of material fact and Lee is entitled to judgment as a matter of law. Lee's four causes of action in this case are:

(1).     Retaliation against Lee by Co-Defendants the City of Moraine and the City of Moraine Fire Department (collectively, "Moraine Fire") for opposing a discriminatory practice that violated the Age Discrimination in Employment Act 42 U.S.C. 401, *et seq*. ("ADEA") and the Genetic Information Non-Discrimination Act, 42 U.S.C. 2000ff, *et seq* ("GINA").

(2).    Retaliation against Lee by Moraine Fire for initiating and participating in an EEOC complaint about Moraine Fire's discriminatory practices.[1]

(3).    Discrimination against Lee by Defendants Moraine Fire and the Moraine Professional Firefighters Association, IAFF Local 2981 ("the Union") in violation of the ADEA; and

(4).    Discrimination against Lee by Defendants Moraine Fire and the Union in violation of GINA.

Judgment should be granted in Plaintiff's favor on three of four of the above causes of action, and this case should proceed for a determination of Plaintiff's damages. The reasons for this motion are more fully set forth in the attached memorandum.

Respectfully submitted,

/s/ Adam R. Webber_____
Adam R. Webber (0080900)
FALKE & DUNPHY, LLC
30 Wyoming Street
Dayton, Ohio  45409
Tel:     (937) 222-3000
Fax:     (937) 222-1414
Email:  webber@ohiolawyers.cc
Trial Attorney for Plaintiff

---

[1] As discussed below, summary judgment is not being sought on this cause of action at this time because there are genuine issues of material fact on this cause of action.

<u>**MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT**</u>

**I.    INTRODUCTION**

In 2011, Defendants Moraine Fire and the Union changed the physical fitness examination requirements for Moraine firefighters.  Prior to 2011, firefighters had the option of having a "full" physical or a "partial" physical.  If a firefighter opted for the partial physical, the physician administering it could order additional tests if, in his medical judgment, they were warranted.  Moraine Fire and the Union changed the physical requirements to require firefighters *over* the age of 40—regardless of their health—to complete full physicals.  Firefighters *under* 40 would receive very limited (and therefore cheaper) physicals, which in many cases involved only a health questionnaire.

David Lee was a Moraine firefighter who opposed this change.  At the time, he was 43 years old, and he refused to take any physical not required of a firefighter under 40.  Lee explicitly and repeatedly informed Defendants that the new physical policy violated the ADEA and GINA.  When Moraine Fire refused to reconsider its policy, Lee filed a charge of discrimination with the EEOC.  He was subsequently terminated for his refusal to take the test.

David Lee states, without reservation, that he believes that a firefighter's physical fitness to perform the job is important.  Lee never opposed Moraine Fire's pre-2011 physical fitness regimen.  What Lee objects to is the propriety and legality of requiring firefighters over 40 to submit to full physicals and to disclose their genetic information as part of that physical.  Lee believes—and the law requires—that a firefighter's physical fitness should be judged and evaluated on an individualized, medical basis without regard to age or family medical history. He further believes—and the law requires—that he should not have been ordered to comply with a discriminatory physical fitness policy, nor should he have been terminated for opposing the policy or participating in an EEOC investigation about the policy.

## II.    STATEMENT OF FACTS

David Lee was a firefighter/EMT for Moraine Fire for nearly sixteen years.  (Lee Aff ¶2).

He was a member of the Union throughout that time period.  (*Id.*)

In April 2008, Moraine Fire implemented a physical fitness requirement denominated as

"Standard Operating Guideline 100.5.13 – Health and Wellness Physicals Revised 4/7/2008"

(the "2008 SOG").  (Ex. S; Cooper Depo. p. 14-16, 139).  Moraine Fire and the Union then

adopted the 2008 SOG through a "Memorandum of Understanding."  (*Id.*).  Although it was

passed in April of 2008, no Moraine firefighter was required to take or pass a physical that year.

(Trick Depo. p. 15; Ex. 2).

In early 2011, the Union and its members were under pressure to agree to a new

collective bargaining agreement with Moraine Fire due to the impending passage of Ohio's

"Senate Bill 5."[2]  (Lee Aff. ¶4).  Moraine Fire proposed new language in Article 10, Section 5 of

the proposed CBA, which read:

> It is understood and agreed that the City may establish a program to monitor
> employee safety and health.  This program is intended to comply with the
> requirements set forth in OAC-4123:1-21-07(F)(1,2); OAC-4123:1-21-02(P)(3)
> and the Moraine Fire Division Non-Emergency SOG "Health and Wellness
> Physicals" **rev. 4/1/2011**.  (Copper Depo. p. 146; Ex. B, p.14)(emphasis added).

At a Union meeting, Lee had asked for a copy of the revised SOG and was told it was

unavailable.  (Lee Aff. ¶4).  Lee voted against accepting the new CBA, but it was passed by a

majority of the union membership.  (Lee Aff. ¶4; Ex 12).

In late 2011, Lee first learned that, under the revised SOG, firefighters over-40 were to be

treated differently than those under 40.  On November 23, 2011, Lee received an email sent to all

---

[2] Senate Bill 5 threatened to dramatically alter Ohio's public service union negotiating rights.See "In Ohio, Labor
Rallies for Referendum Against Anti-Union Bill", The Atlantic, March 16, 2011, available at
http://www.theatlantic.com/politics/archive/2011/03/in-ohio-labor-rallies-for-referendum-against-anti-union-
bill/72569.

firefighters explaining, "If you are under the age of 40, you only receive a partial physical which involves the questionnaire only." (Lee Aff. ¶5; Ex. D). Lee completed the questionnaire sent to him by Dr. Lovett's office and forwarded it to Lovett's office. (Lee Aff. ¶6). Question 1(a) on the questionnaire asks, "Is there a family history of heart disease with your parents or siblings?" (Lovett Depo. p. 85-87; Ex. F).

Lee, however, began to have reservations about the legality of the 2011 SOG. He researched discrimination laws online and, in early 2012, Lee made an appointment with the Cincinnati EEOC office. (Lee Aff. ¶7). During his meeting at the EEOC, Lee was told that the 2011 SOG likely violated the ADEA and GINA. (*Id.*).

On January 30, 2012, Lee was scheduled for his "full" over-40 physical with Dr. Lovett. At Dr. Lovett's office, he asked that he be permitted to only complete those tests required of a firefighter under-40. (Lee Aff. ¶8). In an email from Dr. Lovett's office to Moraine Fire, they described Lee's behavior as follows:

> Patient requested that he would only allow a partial physical to be performed, however, according to the Moraine FD roster, David Lee was to receive a full workup . . . (A 40 year old wellness physical). Patient agreed to only a partial exam . . .[a]lthough Moraine's contract did not allow for employees to decide between a partial and full exam . . . Patient recited that he felt according to the Ohio Administrative Code it was age discrimination to receive the full physical based on being over 40 years of age. Throughout the exam, patient was not argumentative, but stern on his decision. (Cooper Depo. p. 82, Ex. 24).

Although he offered to take the same minimal physical required of a firefighter under 40, Lee was told during his non-exam that Dr. Lovett's office had called Deputy Chief Cooper at Moraine Fire and confirmed that his choices were a full, over-40 physical or be deemed "Not Fit for Duty." (Lee Aff. ¶8; Trick Depo, p. 56-57).

After leaving Dr. Lovett's office, Lee returned to work. Lee approached his immediate supervisor, Lt. Phil Sinewe, and stated he needed to file a complaint about the physical; Sinewe

told Lee would have to talk to Deputy Chief David Cooper. (Lee Aff. ¶9). The two men then proceeded to meet with Cooper. Lee explained his objections and asked Cooper what they might do to resolve his concerns. (Lee Aff. ¶9). Cooper told Lee to "reduce his complaint to writing," and he told Lee that, by going to the EEOC, Lee "already took it out of the City's hands." (Cooper Depo. p. 75-80; Ex. 23).

Lee did as he was asked and wrote a four-page letter explaining that he objected to the 2011 SOG as being "age discrimination" and objected that the medical questionnaire asked impermissible questions. (Cooper Depo. p. 82; Ex. 26). When he delivered the letter to Cooper's office later that day, Cooper asked Lee why he took the complaint "out of the department" by going to the EEOC first. (Cooper Depo. p.90; Ex. 27). Lee explained that he had not yet filed a formal EEOC complaint, and he wanted to try to first resolve it with Moraine Fire. (Lee Aff. ¶10)

During this meeting, Lee also mentioned to Cooper that the SOG violated GINA. (*Id*.). He explained that Dr. Lovett's form requested family medical history and additional screening for firefighters with a family history of prostate cancer. (*Id*.) At all times when meeting with his supervisors, Lee was professional, and "firm in his convictions." (Trick Depo. p. 49-50).

Three days later, Lee was called into a meeting with Fire Chief Anthony Trick and Lt. Sinewe. Although he had already explained his opposition in writing, Lee's supervisors grilled him about why he was fighting the physical policy. (Lee Aff. ¶11). Lee reiterated that he believed the physical policy violated GINA and "EEOC age laws." (Trick Depo. p. 68; Ex. 28). Whenever he tried to explain that he believed the laws to be illegal, however, his supervisors refused to discuss these concerns. (Trick Depo. p. 68).

Less than a week after that, Lee was again confronted about his opposition to the physical policy by Sinewe. (Ex. 29). Sinewe gave Lee a memo that Cooper had drafted. (Cooper Depo.

p. 96; Ex. 29, 30). The memo did not address any of Lee's concerns about GINA or the ADEA; instead Cooper's memo defended the importance of firefighter physical fitness (a point that Lee never contested) and noted that several firefighter trade groups suggested that the frequency of some health tests should be based on age or family history. (Ex. 30). During the meeting, Sinewe accused Lee of having a health issue that prevented him from taking his physical. (Ex. 29). Lee, of course, denied this. (*Id.*). Frustrated by Moraine Fire's failure to address his concerns about the legality of the physical policy, on February 8, 2012, Lee told Sinewe that he was now going to file with the EEOC. (Ex. 29; Lee Aff. ¶13). Sinewe reported Lee's plans to Cooper. (Ex. 29).

Cooper and Trick then formulated "a plan" on how to deal with Lee. (Cooper Depo. p. 99). Later that same day, Moraine Fire ordered Lee to complete the full physical within thirty days or else he would be (a) deemed "Unfit for Duty" and (b) disciplined "based on [his] refusal to comply with this directive." (Cooper Depo. p. 101; Ex. G).

True to his word, Lee filed a charge with the EEOC. Moraine Fire received notice of it shortly thereafter. (Lee Aff. ¶14; Ex. 32; Trick Depo. p.73). In the EEOC charge of discrimination, it is specifically alleged that Lee was subjected to different job requirements because of his age in violation of the ADEA and was required to disclose genetic information in violation of GINA. (*Id.*).

Lee continued his opposition and did not take the full, over-40 physical within the 30 days. On the 30th day, March 9th, Lee was called into another meeting, where he was confronted by Trick, Cooper, and the Moraine City Manager, David Hicks, for over forty minutes about his refusal to take the physical. (Lee Aff. ¶15). During the meeting, Hicks and Trick again refused to discuss Lee's position that the physical policy was unlawful. Each time Lee brought up his legal objections, he was mocked by Hicks, who chided "as far as I know, you

haven't been to law school," accused Lee of trying to use his "law degree," and asked Lee if he thought he was more educated than the City's attorney. (Lee Aff. ¶16). Instead Hicks told Lee, "None of us want to be sitting here… I don't want to be spending money having the [City's] Law Department research this…it's a waste of time and resources . . ." (*Id.*) Lee told them that he was "going to follow through with this," he was "ready to stand on [] principal," and was ready to "lose his job" over his objections to the physical program. (Lee Aff. ¶16; Ex. 39).

At the close of the meeting, Lee was placed on administrative leave without pay and charged with insubordination, which Moraine Fire deemed a "Group III" offense, the most serious level of offense in its disciplinary policy. (Trick Depo. p. 74-75; Ex. H). Group III offenses are defined in the CBA as "infractions that are of a serious or possibly criminal nature." (Ex. B, p. 91). Lee filed a grievance arguing that the level of the infraction should be lower and that his unpaid suspension violated R.C. §124.388, which states that, unless he has committed a felony criminal act, he must be placed on *paid* leave. See R.C. §124.388 and (Lee Aff. ¶17; Ex 36). The grievance was denied by Moraine Fire, which affirmed its decision because: (1) Lee did not follow the SOG; (2) he did not make them aware of his objections in a "timely fashion"; and (3) he did not comply with the order to take the physical. (Trick Depo. p. 73-74; Ex. 37).

Several days later, Lee attended a disciplinary hearing, and he provided those present with excerpts of the ADEA and GINA laws. (Lee Aff. ¶18). At the hearing, Lee again explained that the EEOC had told him that the physicals policy was unlawful and he now felt that he was being retaliated against. (Lee Aff. ¶19; Ex. 42). When asked why he had not complied with a direct order to take the physical, Lee responded that he felt that it was an unlawful order. (*Id.*) Nevertheless, the hearing resulted in a finding that "the employee failed to follow a direct order from his Chief" and approved the discipline. (*Id.*).

After the hearing, Lee decided that, in order to avoid losing his public employment, the best course of action was for him to take the physical under protest and continue to fight the policy through the EEOC. (Lee Aff. ¶20). So, on approximately March 20, 2012, Lee scheduled his over-40 physical with Dr. Lovett's office at their earliest date: March 30, 2012. (*Id.*). He notified Deputy Chief Cooper that he had done so. (*Id.*).

Moraine Fire then fired Lee on March 28, 2014—two days before his scheduled physical. Moraine Fire decided that Lee could not "cure insubordination by an 'after-the-fact' attempt at compliance" and that Moraine Fire did not believe that Lee's "'newly scheduled exam' was anything more than another attempt to delay [his] discipline and/or continue to disrupt the operations of the Department." (Trick Depo. p. 85; Ex. 46).

Lee was terminated on March 28, 2012. (Trick Depo. p. 92-93; Ex. J). He filed a second grievance, which the City denied. (Trick Depo. p. 85; Ex. 44, 46). The Union refused to take either grievance to arbitration. (Lee Aff. ¶21).

On April 19, 2013, Lee was given a "Right to Sue" Notice by the EEOC. (Lee Aff. ¶22; Ex. 51). Moraine Fire refused the EEOC's offer to conciliate. (*Id.*). The EEOC found that there was "reasonable cause to believe that violations of the statute(s) occurred." (*Id.*).

## III.    LAW AND ARGUMENT

### A.    Summary Judgment Standard

Under Rule 56, a party is entitled to summary judgment when there is no genuine dispute over any material fact and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment should be granted unless "there are [] genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the absence of a genuine issue of material fact. *Celotex,* at 323. The party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

    **B.**    **David Lee Was Retaliated Against by Moraine Fire for Opposing the Physicals Policy.**

In this case, Lee was retaliated against by Moraine Fire for both opposing the discriminatory physical policy and for participating in the filing a charge of discrimination with the EEOC. Lee explicitly opposed the policy as violating the ADEA and GINA, and Moraine Fire's actions violated both laws.

Employment retaliation is typically categorized as either "opposition" retaliation or "participation" retaliation. See e.g. *Niswander v. Cincinnati Ins. Co*., 529 F.3d 714, 720 (6th Cir. 2008). The ADEA and GINA both forbid both types of retaliation. Under the ADEA, it is "unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has <u>opposed</u> any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or <u>participated</u> in any manner in an investigation, proceeding, or litigation." 29 U.S.C. §623(d) (emphasis added). GINA uses nearly identical language. See 42 U.S.C. §2000ff-6(f). The ADEA and GINA retaliation prohibitions are considered to be synonymous.[3]

---

[3] Both the ADEA's and GINA's retaliation provisions are treated synonymously with Title VII's retaliation provision. The EEOC has taken the position that "Congress intended the standard for determining what constitutes retaliatory conduct under GINA to be the same as the standard under Title VII, as announced by the Supreme Court

In this case, Lee was subjected to both oppositional and participatory retaliation. In order to establish a prima facie case of retaliation, Lee must establish that:

(1) Lee engaged in protected activity;

(2) Moraine Fire knew of the exercise of the protected right;

(3) an adverse employment action was subsequently taken against Lee; and

(4) there was a causal connection between the protected activity and the adverse employment action.

*Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008); *Morris v. Oldham County Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000).

Once a plaintiff establishes a *prima facie* case, the employer must then articulate a legitimate, nondiscriminatory reason for the adverse action. *See Douglas v. Eaton Corp.*, 6th Cir. Case No. 13-3537, 2014 U.S. App. LEXIS 16166, *6 (6th Cir. Aug. 20, 2014). In this case, the uncontroverted facts demonstrate that Lee was discriminated for opposing Moraine Fire's policy, and Moraine has not articulated a nondiscriminatory reason for its termination of Lee.

> a. Lee Was Retaliated Against for Opposing the Unlawful Collection of His Genetic Information and Opposing the Age-Discriminatory Physical Policy.

> > i. *Lee's Prima Facie Case for "Oppositional" Retaliation.*

> > > 1. **Lee Engaged in Protected Activity.**

First, Lee engaged in protected activity by opposing Moraine Fire's policy. Under the opposition clause, an employee is protected against retaliation for opposing any practice that the employee reasonably believes to be a violation of Title VII. *Johnson v. Univ.of Cincinnati*, 215 F.3d 561, 579-80 (6th Cir. 2000). The Supreme Court has stated that the term "oppose" carries

---

in *Burlington Northern & Santa Fe Ry.* v. *White*, 548 U.S. 53 (2006)." *Regulations Under the Genetic Information Nondiscrimination Act of 2008*, 75 Fed. Reg. 68912 (Nov. 9, 2010). The EEOC's interpretation of employment discrimination laws are to be given "great deference" by the courts. *Johnson v. University of Cincinnati*, 215 F.3d 561, 580 (6th Cir. 2000) (citing *Griggs v. Duke Power Co*., 401 U.S. 424, 434 (1971)). The Sixth Circuit has also held that "cases interpreting Title VII are [] an appropriate source of authority for interpreting the ADEA's anti-retaliation clause." *Butts v. McCullough*, 237 Fed.Appx. 1, 5-6 (6th Cir. 2007).

its ordinary meaning: "to resist or antagonize . . . ; to contend against; to confront; to resist; to withstand." *Crawford v. Metro Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009).

Protected acts of opposition can include "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; <u>refusing to obey an order because the worker thinks it is unlawful</u> . . . ; and opposing unlawful acts by persons other than the employer -- e.g., former employers, union, and co-workers." *Butts v. McCullough*, 237 Fed. Appx. 1, 5 (6th Cir. 2007) (citing *Johnson v. University of Cincinnati*, 215 F.3d 561, 579 (6th Cir. Ohio 2000)(citing EEOC Compliance Manual, (CCH) P 8006)). "When an employee communicates to [his] employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes and employee's opposition to that activity." *Crawford v. Metro* Gov't, 555 U.S. 271. 276 (2009)(citations omitted). Here, Lee repeatedly and explicitly complained to Moraine Fire that he believed the physical policy violated GINA and the ADEA. Lee also refused to obey the order for him to take the physical because he believed it to be unlawful.

Further, Lee's opposition was reasonable, based on a good faith belief that the opposed practice was unlawful, and tailored to the practice he opposed. See *Johnson v. University of Cincinnati,* 215 F.3d 561, 579 (6th Cir. 2000). Before making his stand with Moraine Fire, Lee sought advice and counsel of the EEOC, whose investigator confirmed that he also believed Moraine Fire's policy to be unlawful. (Ex. 27, Ex. 28). Assured that his objections were well-founded, Lee repeatedly but calmly objected to the physicals policy. (*Id.*; Trick Depo. p. 49-50; Ex.24). His oppositional conduct specifically concerned the policy that he believed violated the ADEA and GINA. *See Clark v. Evergreen Southwest Behavioral Health Servs., LLC*, Case No. 1:12-cv-00218, 2014 U.S. Dist. LEXIS 61375, *20 (S.D. Ohio May 1, 2014) (citing *Fox v. Eagle Distrib. Co., Inc*., 510 F.3d 587, 591 (6th Cir. 2007)).

### 2. **Moraine Fire Knew of Lee's Opposition to the Policy.**

Moraine Fire knew that Lee was exercising his right to oppose discrimination.  Moraine Fire confirmed repeatedly in emails that Lee was objecting to the physicals policy and the grounds of his objection. (Ex. 25; Ex. 27; Ex. 28).  Cooper and Trick also confirmed this in their depositions. (Trick Depo. 67-68; Cooper Depo. 76-78).

### 3. **An Adverse Employment Action Was Taken Against Lee.**

An adverse employment action was subsequently taken against Lee, to wit, he was suspended without pay and then fired.  (Ex. H; Ex. J).  Both are adverse employment actions. *Pate v. MetoKote Corp*., Case No. 3:11-cv-209, 2012 U.S. Dist. LEXIS 162032, *27 (S.D. Ohio Nov. 13, 2012)(Rose, J.)(quoting *Smith v. City of Salem*, 378 F.3d 566, 575-76 (6th Cir. 2004).

### 4. **There Was a Causal Connection Between Lee's Opposition to the Policy and His Termination.**

Finally, there was a causal connection between the protected activity and the adverse employment actions.  All parties agree that the *sole reason* Lee was suspended and then terminated for refusing to take his physical.  (Ex. H; Ex. J, Trick Depo. 88-89).  'But-for' his refusal, Lee would not have been terminated; his protected activity was the only reason for the adverse action.  *EEOC v. Avery Dennison Corp*., 104 F.3d 858, 861 (6th Cir. Ohio 1997).  Therefore, there is a causal link between Lee's opposition to the 2011 SOG and his termination.

#### ii. *Moraine Fire's Reason for Termination is Not Non-Discriminatory.*

After a showing of a prima facie case, the burden shifts to Moraine Fire to articulate a legitimate, non-discriminatory reason for Lee's termination.  This it cannot do.  Moraine Fire contends that Lee was terminated for *insubordination*.  Moraine Fire denies that it retaliated against Lee for refusing to comply with its discriminatory policy, but was justified because his refusal constituted insubordination.  This is a distinction without a difference. Moraine Fire's

stated reason for termination—insubordination for refusing to comply with a discriminatory policy—is legally and logically indistinguishable from bare retaliation.

Firing an employee for insubordination for refusing to obey an order believed to be discriminatory is simply not a non-discriminatory reason for termination. First, insubordination is one of the textbook ways in which an employee acts in "opposition" to a discriminatory law. *See Butts*, *supra*. (appropriate opposition includes "refusing to obey an order because the worker thinks it is unlawful"). If an employer can terminate an employee for insubordination for opposing a discriminatory practice, it would render all anti-retaliation laws meaningless.

Second, this semantic attempt to distinguish "insubordination" from protected opposition has been previously rejected by this Court. In *O'Donnell v. Burlington Coat Factory Warehouse, Inc,* this Court considered the plight of female sales clerks who had been ordered to wear demeaning smocks whereas their male counterparts were allowed to wear shirts and ties. *O'Donnell v. Burlington Coat Factory Warehouse, Inc*, 656 F. Supp. 263, 264 (S.D. Ohio 1987). The female clerks filed a complaint with the EEOC and then opposed the practice by refusing to comply with their orders to wear the smock. *Id.* The women were all fired for refusing the order. *Id.* The employer argued that the women's' "willful refusal to obey managements' order to wear the smock constituted insubordination and thus justified their discharge." *Id.* at 266-267. This Court rejected that argument: "although victims of discrimination are required to utilize the administrative process before filing a lawsuit, they are not required to abide by unlawful job requirements to keep their jobs while using the administrative process. . . Hence we reject [the employer's] contention that we should find plaintiffs were discharged for insubordination." *Id.* This Court then granted judgment for the plaintiffs. *Id.*

Similarly, in *Allen v. Lovejoy*, the Sixth Circuit considered the case of a female public employee who refused to use her married name at work. *Allen v. Lovejoy*, 553 F. 2d 522, 523

(6th Cir. 1977). The employee was then told by her supervisors that she was "required to comply with the 'name change policy' of the County." *Id.* When she refused to obey, she was suspended. *Id.* The Sixth Circuit reversed the district court's granting of summary judgment to the employer, rejected the employer's reasoning, and instead entered judgment for the employee on the question of liability. *Id.* at 524-25.

Other federal courts have reached similar conclusions about the false dichotomy between insubordination and legally-protected oppositional conduct. The Ninth Circuit held that that a prison guard could demonstrate retaliation if he could show that the reason why he refused to carry out an order was because he believed the order was discriminatory. *Moyo v. Gomez*, 40 F.3d 982, 984-85 (9th Cir. 1995)(holding that "[o]pposition can, of course, consist of a refusal to carry out an order or policy."); see also *Armstrong v. Index Journal Co.*, 647 F.2d 411, 448-49 (4th Cir. 1981)(granting judgment to an employee who refused to carry out her assigned duties when she opposed the assignment as gender discriminatory). Another court granted summary judgment to a plaintiff and held that the "disobedience of an order, which appears to be in conflict with an employee's right to oppose employment practices that he reasonably believes to be unlawful" is protected opposition. *Swanson v. Civil Air Patrol*, 37 F.Supp.2d 1312, 1329-30 (M.D. Ala. 1998). Another court granted judgment to a plaintiff who was fired for insubordination for refusing to accept a discriminatory transfer. *Harris v. Richards Manufacturing Co., Inc.*, 511 F.Supp. 1193, 1203-05 (W.D. Tenn. 1981)(holding that the employer's proffered "nondiscriminatory" reason for the termination—insubordination—was "definitively unworthy of credence"); see also *Reeder-Baker v. Lincoln Nat'l Corp.*, 649 F.Supp. 647, 660 (N.D. Ind. 1986)(granting judgment to an employee and holding that the employer's argument that an employee's complaint about a discriminatory act constituted insubordination "is not worthy of credence").

Simply put, because Moraine Fire admits that Lee was terminated for his refusal to comply with a discriminatory policy, it cannot then call it "insubordination" and avoid the inevitable conclusion that he was terminated for engaging in oppositional activity.  Therefore, Moraine Fire fails to carry its burden; it cannot state a non-discriminatory reason for Lee's discharge.  Summary judgment should be granted in Lee's favor on his claim of retaliation.

   b.  David Lee was Retaliated Against by Moraine Fire for Participating in an EEOC Investigation.

As stated earlier, Lee also contends that he was retaliated against, in part, for his initiating of and participation in an EEOC charge of discrimination.  Record evidence supports his allegation.  Nevertheless, Lee anticipates that Moraine will deny any retaliatory animus and so there will be a genuine issue of material fact on this question based on witnesses' credibility.

C.  **Moraine Fire and the Union Discriminated Against David Lee By Requesting and Requiring Him to Participate in a Physicals Policy that Discriminated Against Him Because of His Age.**

   a.  Moraine Fire and the Union Collaborated to Create the 2011 SOG, which is Facially Discriminatory Toward Firefighters Over Age 40.

In this case, the SOG crafted by Defendants is facially discriminatory as to age.  It explicitly treats firefighters over the age of 40 differently than those under 40.  Therefore, it is discriminatory under the ADEA and Ohio's anti- discrimination statute, R.C. §4112.14, on its face.[4] See *Trans World Airlines v. Thurston*, 469 U.S. 111, syllabus (1985)(a policy that treats pilots over 60 differently is "discriminatory on its face"); *Courtney v. La Salle Univ.*, 124 F.3d 499, 506 (3rd 1997)(if a policy sorts employees according to age, its facially discriminatory).

---

[4] Against Moraine Fire, Plaintiff asserts causes of action under the ADEA and R.C. §4112.14.  Against the Union, Plaintiff continues to assert ADEA claims.  This Court previously dismissed Plaintiff's Ohio-law age discrimination claim against the Union.  (Doc. 29; PAGEID No. 184).

Because this policy is facially discriminatory, there is no burden-shifting; it is direct evidence of discrimination.  *TWA*, at *syllabus*; *Int'l Union v. Johnson Controls*, 499 U.S. 187, syllabus (1991).  Once a plaintiff has shown that a policy is facially discriminatory, he need not prove that the policy was motivated by ill will or animus toward the suspect class.  *Johnson v. State of New York*, 49 F.3d 75, 78 (2nd Cir. 1995); *Solon v. Gary Cmmty. Sch. Corp.*, 180 F.3d 844, 855 (7th Cir. 1999).  Rather, an employer or labor union's only justification for this type of facial discrimination is to demonstrate that it is a bona fide occupational qualification ("BFOQ"). *See TWA*, at *syllabus*; *Rucker v. City of Kettering*, 84 F. Supp. 2d 917, 930 (S.D. Ohio 2000)(citing *Little Forest Med. Center v. Ohio Civil Rights Comm.*, 61 Ohio St. 3d 607 (1991))(recognizing the BFOQ defense exists under state law).  This, Defendants cannot do.

### b.  Moraine Fire's Treatment of Older Firefighters Is Not a BFOQ.

Moraine Fire and the Union's only defense to the age discrimination present in the 2011 SOG is that it constitutes a bona fide occupational qualification ("BFOQ").  Defendants argue that the age-based physicals policy is necessary to ensure the health and safety of its firefighters' and the public they serve.  The burden is on Defendants to establish a BFOQ.  *Everson v. Mich. Dep't of Corr.*, 391 F.3d 737, 748 (6th Cir. Mich. 2004)

Under the ADEA, an employer and labor organization may discriminate on the basis of age "where age is a bona fide occupational qualification <u>reasonably necessary</u> to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age."  29 U.S.C. § 623(f)(emphasis added).  This defense is written narrowly and should be enforced narrowly.  *Intl. Union v. Johnson Controls*, 499 U.S. 187, 201 (1991) (citing *Western Air Lines, Inc.* v. *Criswell*, 472 U.S. 400 (1985)); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 87 (U.S. 2000).  Congress intentionally limited the BFOQ defense to those situations when age is a specific "occupational qualification" for a job.  *Id*.  In other words, an employer or

17

union can only claim "safety" as a BFOQ in "instances in which [age] actually interferes with the employee's ability to perform the job." *Johnson Controls* at 204; *Everson*, at n15.

The Sixth Circuit has used a three-prong test to adjudge the validity of a BFOQ. To prove a BFOQ, an employer and labor organization must meet all three criteria:

(1)   The employer must have a "basis in fact," for its belief that age discrimination is "reasonably necessary"—not merely reasonable or convenient—to the normal operation of its business;

(2)   The job qualification must relate to the essence, or to the central mission of the employer's business;[5] and

(3)   The employer has the burden of proving that no reasonable alternatives exist to discrimination on the basis of age.

*Everson v. Mich. Dep't of Corr.*, 391 F.3d 737, 748 (6th Cir. 2004)(citations omitted).

        c.   <u>Defendants had no basis in fact for believing that age discrimination</u>
            <u>was reasonably necessary to the operation of the fire department</u>.

As a preliminary matter, any assertion by Defendants that full, annual physicals were "reasonably necessary" to the department's operations is belied by the fact that <u>no</u> firefighter physicals were required in 2008. (Trick Depo. p. 15). Therefore, any assertion that the physicals were "necessary" is simply supposition.

But even if this Court found that firefighter physicals might be "necessary" to the operation of a fire department, the Defendants had no "basis in fact" for believing that requiring full physicals for those over 40 was necessary. The Sixth Circuit has held that a "basis in fact" is demonstrated by showing: (i) that all or substantially all members over a particular age would be unable to perform safely and efficiently the duties of the job involved; (ii) that it is impossible or highly impractical to determine on an individualized basis the fitness for employment of

---

[5] In this motion, Plaintiff takes no position on whether Defendants believe that the over-40 physicals relate to the "essence" of the fire department's business. However, Plaintiff reserves the right to dispute or contest any specific allegation that Defendants *do* meet this prong.

members over a particular age; or (iii) the very age of an employee undermines his capacity to perform a job satisfactorily. *Everson v. Mich. Dep't of Corr.*, 391 F.3d 737, 748 (6th Cir. 2004)(citations and quotations omitted).

In this case, the testimony of Dr. William Lovett, Moraine Fire's physicals physician, disavows any of these considerations. First, Dr. Lovett testified that age had nothing to do with a firefighter's ability to safely or efficiently perform their jobs. (Lovett Depo. p. 89). In fact, Dr. Lovett noted that firefighters over 40 are often the *most efficient* at their job and the *safest* firefighters because of their experience. (Lovett Depo. p. 90-91). Rather, as Dr. Lovett explained, in the 2011 SOG, age serves as a "proxy" for something else: potential diminished physical capacity. (Lovett Depo. p. 89). "[An] employer cannot rely on age as a proxy for an employee's remaining characteristics . . . but must instead focus on those factors directly." *Hazen Paper Co.* v. *Biggins,* 507 U.S. 604, 611 (1993). There is simply no evidence that "all or substantially all" firefighters over 40 are unable to perform their jobs safely or efficiently.

Second, it is not impossible or highly impractical to determine each firefighter's physical ability to perform the job. Dr. Lovett testified that he is perfectly capable and qualified to do an individualized physical for each firefighter. (Lovett Depo. p. 89). In fact, this is precisely how Moraine Fire did it prior to the 2011 SOG; under the 2008 SOG, all firefighters could opt for a partial physical and had additional tests ordered on an *a la carte* basis by the physician. (Ex. 1). This *a la carte* physical system is also used by another Dr. Lovett client, the City of Dayton, to ensure the physical fitness of its firefighters. (Lovett Depo. p. 62-63)

d. <u>Moraine Fire and the Union Cannot Show that No Reasonable Alternatives Existed to Discrimination on the Basis of Age</u>.

As noted above, the Union and Moraine Fire had a prior policy that did not discriminate on the basis of age: the 2008 SOG. This system worked perfectly well for several years before it

was changed to discriminate on the basis of age. Moreover, as noted above, a reasonable alternative to Defendant's policy is individualized testing for each firefighter on an *a la carte* basis. Indeed, both Cooper and Trick admitted that, so far as they know, Moraine Fire is the *only* fire department *anywhere* to make full physicals mandatory for over-40 firefighters. (Cooper Depo. 97; Trick Depo. 21). If that is the case, *every other* fire department in the United States is a reasonable alternative to the 2011 SOG.

In sum, the physical ability of Moraine firefighters to perform the job can be, and has been, determined on an individualized level. There is nothing about celebrating one's 40th birthday that undermines a firefighter's ability to perform the job. Therefore, Moraine Fire and the Union cannot show that their chosen policy is a BFOQ. Summary judgment should be granted because Plaintiff was subjected to a facially discriminatory policy that was not a BFOQ.

### D.    Moraine Fire and the Union Discriminated Against David Lee By Requesting and Requiring Him to Provide Genetic Information in Violation of the Genetic Information Nondiscrimination Act ("GINA").

In addition to requiring Lee to submit to tests solely based on his age, the SOG also required him to provide genetic information for the purpose of obtaining a physical. In order to obtain his physical from Dr. Lovett, Lee was required to complete Dr. Lovett's medical questionnaire. Dr. Lovett's form required Lee and other firefighters to unlawfully disclose family medical history in direct violation of GINA.

GINA, 42 U.S.C. 2000ff, *et seq*. was enacted in 2008 and its provisions that govern the actions of employers became effective in 2009.[6] GINA is both a non-discrimination statute and a confidentiality statute. Among other things, GINA "[r]estricts employers and other entities subject to Title II of GINA from requesting, requiring, or purchasing genetic information." 29

---

[6] GINA's provisions apply to the same employers and employees as Title VII of the Civil Rights Act of 1964, and its enforcement mechanisms are modeled after Title VII.

CFR 1635.1(a)(2); 42 U.S.C. 2000ff-1(b). Both Moraine Fire and the Union are "covered entities" under GINA. 29 CFR 1635.2(b); 2 U.S.C. 2000ff-2(B)-(C).

The "genetic information" that GINA forbids employers from requesting or requiring the disclosure of includes "family medical history." 29 CFR 1635.3(c)(iii); 42 U.S.C. 2000ff-1(4)(iii)(genetic information means information about "the manifestation of a disease or disorder in family members"). These prohibitions extend to employers and unions requiring employees to provide genetic information to contracted medical examiners. In fact, GINA's regulations explicitly address this issue:

> The prohibition on acquisition of genetic information, including family medical history, applies to medical examinations related to employment. A covered entity must tell health care providers not to collect genetic information, including family medical history, as part of a medical examination intended to determine the ability to perform a job, and must take additional reasonable measures within its control if it learns that genetic information is being requested or required. Such reasonable measures may depend on the facts and circumstances under which a request for genetic information was made, and may include no longer using the services of a health care professional who continues to request or require genetic information during medical examinations after being informed not to do so.

29 CFR 1635.8(d).

In direct contravention of GINA's prohibition, the 2011 SOG specifically requires additional testing for prostate cancer (a blood test for the prostate-specific antigen, "PSA") for those firefighters who "have [a] primary relative with [a history] of Prostate Cancer." (Cooper Depo. p. 20-21, 97; Ex. A). This means that SOG violates GINA on its face. Unlike the ADEA, however, there is no BFOQ defense to GINA. See, generally, 42 U.S.C. §2000ff-1(b) (exceptions to GINA's prohibitions).

In further violation of GINA, Moraine Fire's contracted medical examiner, Dr. Lovett, specifically requested firefighters' family medical history. Prior to their physical, all firefighters are required to complete a questionnaire and to deliver it to Dr. Lovett's office for review. (Ex. F;

Cooper Depo. p. 65). On the questionnaire, question "1A" reads: "Is there a family history of heart disease with your parents or siblings?" (*Id*). Shockingly, when asked about this question, Dr. Lovett insisted that he used the same form created by OSHA—except that the <u>only</u> questions he added to OSHA's form were questions about family medical history. (Lovett Depo. p. 84-86). Dr. Lovett then (rather tellingly) pointed out that *OSHA's questionnaire* "was written by attorneys," but his was not. (*Id*).

At all times, Moraine Fire and the Union were aware that Dr. Lovett's office requested family medical history. The form was completed by Chief Trick, Deputy Chief Cooper, and Union President Michael Harris as the form that they themselves each filled out for their physicals by Dr. Lovett. (Cooper Depo. p. 66; Trick Depo. p. 34; Lovett Depo. p. 85). In contravention of 29 CFR 1635.8(d), no representatives of Defendants ever told Dr. Lovett or his office not to request family medical information on his questionnaire. (Lovett Depo. p. 86-87).

What is clear is that Moraine Fire and the Union collaborated to create and enforce a workplace policy that forced David Lee and other firefighters to submit to physicals. As part of the physical, Lee and other firefighters were required to disclose their genetic information and family medical history in direct violation of GINA. Plaintiff Lee respectfully requests that summary judgment be granted against Moraine Fire and the Union on the question of liability for their violation of GINA.

## III. CONCLUSION

Summary judgment should be granted in Plaintiff's favor on three of his four causes of action. Judgment should be rendered against Defendant Moraine Fire for retaliating against Lee for exercising his right to oppose its discriminatory practice and against Defendants Moraine Fire and the Union for instituting a discriminatory policy that violated the ADEA and GINA. After judgment is granted, this matter should proceed for a determination of Plaintiff's damages.

Dated:  September 30, 2014

Respectfully submitted,

/s/ Adam R. Webber
Adam R. Webber (0080900)
FALKE & DUNPHY, LLC
30 Wyoming Street
Dayton, Ohio  45409
Tel:     (937) 222-3000
Fax:     (937) 222-1414
Email:  webber@ohiolawyers.cc
Trial Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served upon the
following this 30th day of September, 2014, via the Court's CM/ECF system.

EDWARD J. DOWD
DAWN M. FRICK
JOSHUA R. SCHIERLOH
Surdyk, Dowd & Turner Co., LPA
One Prestige Place, Suite 700
Miamisburg, Ohio 45342

JAMES H. GREER
TRISHA M. DUFF
Bieser, Greer & Landis, LLP
400 PNC Center
6 North Main Street
Dayton, Ohio 45402

MEGAN KATHLEEN MECHAK
Woodley & Mcgillivary LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC 20005

/s/ Adam R. Webber
Adam R. Webber (#0080900)
Attorney for Plaintiff