**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **DAVID LEE,** | : | **CASE NO. 13-CV-222** |
| | : | |
| *Plaintiff,* | : | |
| | : | **JUDGE THOMAS M. ROSE** |
| **vs.** | : | |
| | : | **MAGISTRATE JUDGE** |
| **THE CITY OF MORAINE FIRE** | : | **SHARON L. OVINGTON** |
| **DEPARTMENT,** *et al.,* | : | |
| | : | |
| *Defendants.* | : | |

**PLAINTIFF'S OMNIBUS MEMORANDUM**
**IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

This brief shall serve as Plaintiff's Memorandum in Opposition to the Union's Motion for Summary Judgment (Doc. 44) and the City of Moraine's Motion for Summary Judgment (Doc. 45). This document references and should be read in conjunction with Plaintiff's Omnibus Reply in Support of His Motion for Summary Judgment (Doc. 48). For the sake of judicial economy, Plaintiff will not fully repeat arguments made in Doc. 48, and will instead cite to and incorporate arguments by reference where appropriate.

**I.      Summary judgment should be granted on Plaintiff's <u>oppositional</u> retaliation claim—but it should not be granted in the City's favor.**

The ADEA and GINA recognize two categories of retaliation: (i) retaliation for an employee's "opposition" to a discriminatory practice and (ii) retaliation for making an EEOC charge, testifying, assisting, or "participating" in an EEOC investigation or proceeding.

*Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 719-720 (6th Cir. 2008); (Doc. 37; PageID #204-05).  The burden-shifting framework is the same for both.  *Id.* Lee has asserted causes of action against the City for both types.

As argued in his own Motion for Summary Judgment, Lee has demonstrated that the City retaliated against him because he opposed the City's discriminatory policy.  In its motion for summary judgment, however, the City merely "maintains that it is entitled to summary judgment on that claim."  Doc. 45; PageID #1268.  It offers no other justification for its assertion.

On this cause of action, neither Defendant identifies a genuine issue of material fact that should impede this Court's granting of judgment in Lee's favor as a matter of law.  Lee, of course, maintains that the City has failed to meet its legal burden: to state a legitimate, non-discriminatory reason for its termination of Lee.  This is because it is facially discriminatory to fire an employee for insubordination when the "insubordination" is a protected activity.

However, should this Court somehow find that the City's reason of "insubordination" could be a legitimate, non-discriminatory reason for Lee's termination, then there would still be a question of whether Lee could prove pretext.  Although this Court should not even reach the question of "pretext," if the Court considers the evidence in the light most favorable to Lee, a jury could find the City's proffered reason to be pretextual.  Therefore, even if summary judgment is not granted to Lee on this cause of action, it should not be granted to the City.

## II.  Summary judgment should not be granted on Plaintiff's <u>participatory</u> retaliation claim against the City.

The City next asserts that it did not retaliate against Lee because he participated in and filed an EEOC charge against the City. As argued in his Motion for Summary Judgment, however, Lee asserts that there is a genuine issue of material fact on this question.  The testimony of Lee's supervisors reveals that they treated Lee differently because he filed with the

EEOC and that they resented his having done so. The evidence in this case, viewed in the light most favorable to Lee, would allow a jury to conclude that Lee's decision to file with the EEOC caused the City to take actions against Lee that it would not otherwise have done.

The Sixth Circuit has noted that "exceptionally broad protections . . . extend[] to persons who have participated in any manner in Title VII proceedings." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 582 (6th Cir. 2000)(quoting *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1312 (6th Cir. 1989)). "[O]nce the activity in question is found to be within the scope of the participation clause, the employee is generally protected from retaliation." *Id.*

In its brief, the City claims that it is entitled to summary judgment, but it does not explicitly state which portion(s) of the burden-shifting framework it is addressing. It appears that the City only challenges whether Lee can establish "a causal connection" between filing of an EEOC claim and the City's decision to terminate him. There is, however, more than sufficient evidence to establish causation.

First, it is important to recognize what the City does *not* argue. The City does not deny that Lee was engaged in a protected activity, e.g. his meeting with the EEOC and filing a formal charge with the EEOC. The City does not deny that it was aware of Lee's engaging in this activity. Nor does it deny that Lee was subjected to an adverse employment action.

Instead, the City appears to challenge the existence of a causal connection between Lee's filing with the EEOC and his termination. The record, however, amply demonstrates that Lee's supervisors took action against him in direct response to his EEOC activity. When Lee first told his supervisors that he had spoken to and sought advice from the EEOC, his supervisors refused to discuss Lee's objections and accused him of "taking it out of their hands." (Cooper Depo. p. 80). Cooper blamed Lee for "involving" the EEOC and its "attorneys." (*Id.*). Later, when it became clear that the City was not going to alter its position, Lee told his supervisors that he was

3

going to file a formal complaint with the EEOC. <u>Just a few hours later</u>, his supervisors then formally *ordered* Lee to take the physical. (Ex. 29; Ex. G). Lee's supervisors testified that, because Lee filed with the EEOC, "that changed the entire dynamic" of how they dealt with him, and they repeatedly voiced their displeasure in his having discussed the matter with the EEOC before he brought it to them. (Trick Depo. 62-65; Ex.27). Lee's supervisors also justified his suspension because he did not bring his objections to his supervisors "in a timely fashion" and that he "caus[ed] the problem" by going to the EEOC first. (Ex. 40; Cooper Depo. 95). All these facts reveal that Lee's supervisors were upset and resented Lee's talking to and filing with the EEOC and that it played a part in how they treated him.

The City next argues that Lee cannot establish causation because he filed his EEOC charge *after* he was threatened to take the physical or face discipline. (Doc. 45; PageID # 1268). While this is true, this ignores the reality that, just hours before the City made its threat to "take the physical or else," Lee had declared that he was going to formally file with the EEOC. Just as filing with the EEOC is a protected activity, so is threatening to do so. See *Jeffries v. Wal-Mart Stores, Inc.*, 15 Fed. Appx. 252, 259 (6th Cir. 2001)(holding that the statement of a definite intent to file a charge qualifies as protected activity under the participation clause); *Polk v. Yellow Freight System, Inc.,* 801 F.2d 190, 200 (6th Cir. 1986)(holding there is no legal distinction between filing and threatening to file a charge).

Moreover, the evidence demonstrates that the City began planning to discipline Lee only after he declared he would file with the EEOC. While it is generally true that, if an employer has already decided to take the adverse action *before the protected activity*, then it is generally able to show that the protected activity did not cause the adverse action. But causation *will* be shown when an employer deviates from its chosen course after the protected activity. As the Sixth Circuit recently held, "an employer proceeding along lines previously contemplated, though not

4

yet definitively determined, is no evidence whatever of causality, but where an employer deviates from those lines, temporal proximity can certainly be evidence of causality." *Montell v. Diversified Clinical Servs*., 757 F.3d 497, 507 (6th Cir. 2014)(citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001)).

Here, there is no evidence that the City ever considered charging Lee with insubordination *until* he mentioned the EEOC.  Lee brought his concerns to his supervisors on January 30, 2012. He told them that he was ready to file with the EEOC.  (Ex. 27).  Only after Lee declared his intent to file with the EEOC did Cooper and Trick initiate "a plan" on how to deal with Lee.  (Cooper Depo. p. 99-101; Ex. 29, 30, Ex. G).  Between January 30th and February 8th, the City tried to cajole him into changing his belief about the legality and necessity of the physicals policy. (Ex. 27-30).  Lee continued to reiterate that he did not think the policy was legal.  (Ex. 29).  On February 8, Lee was handed a memo defending the necessity of the physicals. (Ex. 29-30).  Determining that the City wasn't going to change its position, Lee told his supervisor that he was "going to the EEOC in the morning to file a complaint." (Ex. 29).  In response, Lee's supervisors (for the first time) threatened him that his opposition would be "treated as a disciplinary matter."  (Ex. G).

Finally, the evidence establishes that Lee's EEOC filing influenced the City's decision to *terminate* Lee for the insubordination.  Although the City had warned Lee that he would be subject to discipline, there is no evidence that his supervisors had yet decided to fire him.  Only *after* Lee filed his EEOC charge, *after* Lee's 30-day deadline expired, and *after* Cooper, Trick, and Hicks met with Lee one last time to persuade him to take the physical, did the City actually decide that Lee was insubordinate and should be fired.  (Trick Depo. p. 74-75; Ex. H).  Lee had been disciplined for insubordination at least twice before in his career, but he had never been

terminated for it. (Doc. 40; PageID # 983). Notably, this occasion of "insubordination" was the only one to involve the EEOC.

When viewed in a light favorable to Lee, the evidence suggests that Lee's filing with the EEOC negatively affected how the City treated Lee. "The trier of fact may consider an employer's response to an employee's threat to file a charge in assessing whether later adverse employment actions constituted retaliation for the charge actually filed, be that charge baseless or meritorious." *Jeffries v. Wal-Mart Stores, Inc.*, 15 Fed. Appx. 252, 260 (6th Cir. 2001). A jury could determine that the City would not have threatened Lee with discipline and would not have chosen the most severe sanction had Lee not declared his intent to file with the EEOC. There is a genuine issue of material fact as to whether the City's decision to terminate Lee was proximately caused by his protected EEOC activity.

The City's assertion of the "honest belief" defense on this cause of action is also without merit, as explained in Doc. 48; PageID #1288. The City's alleged "honest belief" that its actions would not be considered retaliatory is not a defense and is inapplicable here.

### III. The City and the Union discriminated against Lee in violation of the ADEA.

Lee has alleged a cause of action against both Defendants accusing them of drafting and implementing the 2011 SOG, which discriminated against him because of his age. Neither Defendant has disputed that the SOG is discriminatory on its face. Instead, the Defendants have raised a number of arguments which they contend warrant summary judgment in their favor. None of them are persuasive.

### A. The City's "but-for" causation argument is incorrect.

The City's first argument is that age was not the "but-for" cause of its decision to implement the SOG. (Doc. 45; PageID #1257). The City asserts that it was motivated to

discriminate on the basis of age, not because of an age-based animus but "because of" Dr. Lovett's recommendation that firefighters over 40 need a full physical and those under 40 don't.

This argument is mistaken for several reasons.

First, the City errs in even discussing the "but-for" causation theory. The "but-for" question is a legal tool that is used in some EEO cases to determine whether an illegal motivation actually influenced an employer's decision to take an adverse employment action.[1] This question is completely inapplicable in this case. By passing the 2011 SOG, Defendants violated the ADEA by creating a policy that facially discriminated against older firefighters; *why* Defendants decided to discriminate is simply not relevant.

Second, the City claims that its policy was created to protect older firefighters, their co-workers and the public. This "concern," however, is nothing more than overt discrimination disguised as a desire to "protect" older firefighters. Even if the 2011 SOG was intended to benefit and protect firefighters and the public, this is a *non sequitur*. A good-natured or paternal purpose does not make a workplace policy less discriminatory. As the Supreme Court has repeatedly held "the absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect. . . . The beneficence of an employer's purpose does not undermine the conclusion that an explicit [age]-based policy is [age] discrimination . . . and thus may be defended only as a BFOQ." *Int'l Union v. Johnson Controls*, 499 U.S. 187, 199-200 (1991)(holding that a policy designed to protect unborn fetuses does not excuse discriminating against women); *Ky. Ret. Sys. v. EEOC*, 554 U.S. 135, 162 (2008)(an otherwise discriminatory employment action is not rendered lawful by benign motives).

Neither the City nor the Union dispute that the SOG is facially discriminatory on the basis of age. The Sixth Circuit and the Supreme Court have held that "an employer's intent to

---

[1] For example, one might ask whether "but for" an employee's race, would they have been fired?

discriminate is directly evidenced by the employer's writing or adoption of a facially discriminatory employment policy." *EEOC v. Jefferson County Sheriff's Dep't*, 467 F.3d 571, 581 (6th Cir. 2006), overruled on other grounds, *Ky. Ret. Sys. v. EEOC*, 554 U.S. 135, 147-148 (2008)("a statute or policy that facially discriminates based on age suffices to show disparate treatment under the ADEA."). Lee does not need to prove that the discriminatory policy was designed to be discriminatory *because of* an animus towards that suspect class. *Johnson v. State of New York*, 49 F.3d 75, 78 (2nd Cir. 1995); *Solon v. Gary Cmmty. Sch. Corp.*, 180 F.3d 844, 855 (7th Cir. 1999). Defendants' motives do not make the SOG less facially discriminatory.

    B.  The 2011 SOG is not a BFOQ.

The City next re-asserts its only possible defense to its facially discriminatory policy: it argues that its "differentiating treatment of those over 40" is a BFOQ. (Doc. 45; PageID# 1258). This argument was addressed at length in Plaintiff's Reply in Support of Summary Judgment. (Doc. 48; PageID# 1297). Only the City's new arguments will be specifically addressed here.

    **1) Defendant does not address even its own BFOQ test, let alone the Sixth Circuit's.**

First, the City expounds at length on what the appropriate test is for establishing a BFOQ. Notably absent from its analysis, however, is any reference to the Sixth Circuits' three-prong test in *Everson v. Mich. Dep't of Corr.*, 391 F.3d 737, 748 (6th Cir. 2004). Since *Everson*, its test is the methodology used by the District Courts in the Sixth Circuit. See *Wade v. Napolitano*, 2009 U.S. Dist. LEXIS 132628 (M.D. Tenn. Mar. 24, 2009) and *Becknell v. Bd. of Educ.*, 2008 U.S. Dist. LEXIS 35075 (E.D. Ky. Apr. 29, 2008). *Everson*'s three-prong test is:

(1)    The employer must have a "basis in fact," for its belief that age discrimination is "reasonably necessary"—not merely reasonable or convenient—to the normal operation of its business;

(2)    The job qualification must relate to the essence, or to the central mission of the employer's business; and

(3)     The employer has the burden of proving that no reasonable alternatives exist to discrimination on the basis of age.

*Everson v. Mich. Dep't of Corr.*, 391 F.3d 737, 748 (6th Cir. 2004)(citations omitted).

The City's brief suggests that there is a two-prong test to prove a BFOQ[2]: (1) is the discrimination "reasonably *necessary* to the normal operation of the particular business" and (2) are all or substantially all persons discriminated against unable to perform safely and efficiently the duties of the job involved or that it is "impossible or highly impractical" to deal with them on an individual basis? (Doc. 45; PageID# 1259).

Astonishingly, however, the City never argues that it meets the second prong of its own test.  Possibly, this is because it's 'expert' witness, Dr. Lovett, disavowed any evidence that would prove this second prong.  First, Dr. Lovett testified that age has nothing to do with a firefighter's ability to safely or efficiently perform their jobs.  (Lovett Depo. p. 89).  Second, Dr. Lovett admitted that it is possible and practical to determine each firefighter's physical ability to perform the job.  Dr. Lovett testified that he is perfectly capable and qualified to do an individualized physical for each firefighter.  (*Id.* at p. 89).  In fact, this is precisely how Moraine Fire did it prior to the 2011 SOG and is also used by another Dr. Lovett client, the City of Dayton. (*Id.* at p. 62-63). Dr. Lovett testified that, since he began doing individualized exams of City of Dayton firefighters, he has not had a single cardiac event.  (*Id.* at 76-77).

### 2) There is no evidence that discriminating against firefighters over the age of 40 serves the Fire Department's central mission.

Next, the City states that firefighter health and fitness is central to its "public safety mission."  The City then spills considerable ink to argue this point.

---

[2] The Defendant's reliance on the test endorsed by the Supreme Court in *Western Air Lines, Inc. v. Criswell*, 472 U.S. 400 (1985) is misplaced.  Although *Western Air* is still good law, subsequent Supreme Court and Sixth Circuits cases have further distilled its principles.  See *Everson*, at 748-49.

Lee does not dispute that firefighting is a hazardous occupation and that it is important for a firefighter to be physically able to perform his job. He also agrees that the City has a right to and an interest in ensuring that a firefighter can perform his job safely and efficiently. However, it is not enough for the City to argue that health and safety is important.

Rather, the "job qualification must relate to the essence, or to the central mission of the employer's business." *Everson*, supra. The City never provides any evidence connecting its age-based physicals to its safety mission. Unlike *Everson*, where the gender of prison guards was specifically related to the ability of those guards to maintain a safe prison system, here there is no evidence connecting firefighter age to firefighter safety. The City can only get there by piling impermissible, speculative inferences upon inferences that are not in the record.

The City asks this Court to assume, without any evidence, that its over-40 physicals program actually works. The City has presented no evidence that its physicals program actually makes anyone safer or prevents any on-the-job incidents. The City's logic only makes sense if one accepts the fundamentally discriminatory (and totally false) premise that age = unhealthy = unsafe. When asked, Dr. Lovett could produce no statistics to quantify any of his conclusions or the efficacy of Moraine's physical policy on reducing line of duty deaths. (*Id*. at 69-72, 74-75).

Just because safety is part of the Moraine Fire Department's central mission, this does not mean age affects one's ability to safely perform as a firefighter. The City simply cannot show that its age-based physicals policy actually relates to its safety mission.

### 3) There are multiple, reasonable alternatives to the 2011 SOG.

Finally, the City concludes its BFOQ analysis with the proposition that there are no reasonable alternatives to the SOG. The City's argument is undercut by the notable absence of any evidence that actually supports this assertion. The existence of multiple, reasonable alternatives (such as the City of Dayton's non-discriminatory individualized assessment

program) was discussed at length in Doc. 48; PageID #1300. The City's only new germane argument is that, if one gave a comprehensive physical to every firefighter (a reasonable, non-discriminatory alternative recommended by several firefighting advocacy groups) then there would be a "significant cost" associated. This "significant cost" is neither quantified nor shown to be unaffordable for the City. The City does not meet its burden of proving that there are no reasonable alternatives.

Also, Plaintiff must again object to the City's use of evidence not in the record. The City repeats statistics and medical analysis that was evidence in two New Jersey cases from the 1980s (Doc. 45; PageID #1264-65). But none of these statistics or analysis are in the record in this case. These statistics and the conclusions drawn from them—even if they are still valid 30 years later—are simply not proper evidence for Rule 56's purposes.

### IV.     The City and the Union discriminated against Lee in violation of GINA.

As argued in his Motion for Summary Judgment, Lee has alleged that the Union and the City discriminated against him by violating GINA. The Union and the City "request[ed], require[ed], or purchas[ed] genetic information" by forcing him to disclose family medical history to Dr. Lovett and to take additional tests based on his family medical history. 29 CFR 1635.1(a)(2); 42 U.S.C. 2000ff-1(b); 29 CFR 1635.3(c)(iii); 42 U.S.C. 2000ff-1(4)(iii).

First, both the City and the Union assert that they didn't violate GINA because they never actually requested any information from Lee themselves. (Doc. 44; PageID #1243, Doc. 45; PageID# 1266). The City adds an additional twist to this argument by stating that Dr. Lovett was not an "agent" of the City. What the City and the Union ignore, however, is that GINA makes it illegal for an employer or labor organization to request or receive genetic information directly, but it also makes it illegal for an employer or labor organization to require an employee to disclose it to someone else. Indeed, the GINA regulation 29 CFR 1635.8(d) specifically warns

11

employers and labor organizations that they violate GINA if they require an employee to disclose his genetic information to an outside, independently-contracted health care provider.[3]  The City's assertion of Dr. Lovett's independence simply ignores the plain language of 29 CFR 1635.8(d).

Moreover, this Court is reminded that it has already held that, if Lee was required by the SOG and the CBA to disclose family medical history and genetic information, then those parties who "draft[ed] and/or implement[ed]" the SOG and CBA violated GINA.  (Doc. 24; PageID #151-52).  Discovery has now confirmed that the City crafted the discriminatory SOG, the Union reviewed and consented to it, and the Union and the City then incorporated it by referenced into the CBA.  (Cooper Depo. 35-36, 39-45; Harris Depo. 31; Ex. 5).  Lee was harmed and discriminated against by Defendants when he was fired for refusing to consent to the illegal testing.  See *Kroll v. White Lake Ambulance Auth.*, 691 F.3d 809, 814 (6th Cir. 2012)(holding that a plaintiff suffered discrimination and a cognizable harm when she refused to take an illegal medical examination under the ADA).

Next, the City repeats its bald assertion that 42 U.S.C. §2000ff-2(b)(2) excuses the GINA violation because the physicals were part of a "wellness program."  (Doc. 45; PageID# 1267). As in its Memorandum in Opposition, the City makes no effort to explain why this statutory defense applies in this case.  (Doc. 40; PageID# 999).

Summary judgment is warranted on this claim, but it should be granted in Plaintiff's favor, not Defendants'.

---

[3] In its final Rule commentary, the EEOC explained that it explicitly did not create an exception to GINA that would permit "health care professional acting on the covered entity's behalf to request genetic information as part of a medical examination."  It rejected this notion because "there does not appear to be a case in which the [genetic information], as opposed to the signs and symptoms, is necessary to evaluate an individual's ability to perform a particular job." https://www.federalregister.gov/articles/2010/11/09/2010-28011/regulations-under-the-genetic-information-nondiscrimination-act-of-2008#h-26.

## V.     Ancillary Issues.

### A.   The Moraine Fire Department is a sub-unit of the City of Moraine.

Plaintiff's complaint names both "The City of Moraine Fire Department" and "The City of Moraine." (Doc. 1; PageID #2). Both parties filed Answers (Doc. 5; PageID #57) and have participated fully in this litigation to this point. For practical purposes, however, they have been treated by all parties and the Court as a single defendant. Now, Defendant "City of Moraine Fire Department" claims that it is not a separate legal entity, but rather that it is an indistinguishable sub-unit of the City of Moraine. This is appears to be legally correct. See *Williams v. Dayton Police Dep't*, 680 F. Supp. 1075, 1080 (S.D. Ohio 1987). Plaintiff agrees that "the City of Moraine Fire Department' is not a separate legal entity, and the claims asserted against the City of Moraine Fire Department are properly subsumed into the claims asserted against the City of Moraine.

### B.   Plaintiff's state law age claims against the City are not barred under R.C. §4112.14(C).

Plaintiff's Complaint alleged state age discrimination claims against the City and the Union. The state claims were dismissed against the Union on a Motion to Dismiss. (Doc. 24). The Court held that Lee could not maintain a state age discrimination cause of action because R.C.§4112.14(C) bars claims where a plaintiff has an "opportunity to arbitrate" its claims. The City now argues that the claims asserted against it should be dismissed for the same reason. Lee concedes that, if this Court's prior holding is extended here, his state claims against the City fail.

Respectfully, discovery in this case has only born out the legal error in the Court's prior holding. Lee never had an "opportunity to arbitrate" his claims of age discrimination in this case. Lee filed two grievances, both were denied by the City. (Ex. 48). The Union then voted *not to arbitrate* Lee's grievances. (Ex.48).

This Court should reconsider that its prior decision effectively means that no Ohio union employee could ever make a state law claim for age discrimination. This Court has essentially held that a Union and an employer can create a facially discriminatory policy, deny a union member's requests to arbitrate the matter, and then escape all liability under state law.  As argued in its Objection to Magistrate Judge's Report and Recommendation (Doc. 27; PageID# 168), this Court's holding deviates from past precedent holding that R.C. §4112.14(C) does not apply when the union representing the employee was also engaged in the discrimination.   Compare *Proffitt v. AK Steel Corp.*, 2006 U.S. Dist. LEXIS 5361 (S.D. Ohio Jan. 25, 2006)(holding there is an exception to R.C. §4112.14(C) when a union also discriminates) and *Hinton v. Trinity Highway Prods., LLC*, 2013 U.S. Dist. LEXIS 66997, *11 (N.D. Ohio May 8, 2013)(holding that R.C. § 4112.14(C) does not apply where a union and employer are both sued for age discrimination); with *Hopkins v. City of Columbus, Dep't of Pub. Serv.*, 2014 U.S. Dist. LEXIS 37669, *13-14 (S.D. Ohio Mar. 20, 2014)(plaintiff voluntarily chose to waive his arbitration claim).

Here, Lee wanted to arbitrate his grievance, but his Union denied him that opportunity. To hold that Lee somehow failed to avail himself of an alternative, remedial scheme defies reality.  Lee had only one opportunity to seek redress for these violations of Ohio law: this court of law.  Lee respectfully requests that the Court reconsider its prior interpretation of R.C. §4112.14(C) and hold that it does not apply in this case, especially since discovery has proven that Lee never had anything but an illusory "opportunity to arbitrate" his claims against the City.

      C.   Lee's suit against the Union is not barred because he did not identify the Union on his EEOC charge.

In its Motion for Summary Judgment, the Union argues that any claims against it are barred for a failure to exhaust administrative remedies.  This argument is unpersuasive for three reasons: (1) the Union failed to plead this as an affirmative defense, (2) the only affirmative

defense asserted by the Union that is possibly applicable should be stricken, and (3) there is an applicable exception to the general rule that a named party must be named as a defendant in an administrative agency charge.

### 1) The Union failed to specifically plead its non-inclusion on the EEOC's charge as an affirmative defense, therefore waiving it.

"[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). "Failure to exhaust administrative remedies in a timely manner is an affirmative defense, and the defendant bears the burden of pleading and proving this failure." *Lockett v. Potter*, 259 Fed. Appx. 784, 786 (6th Cir. 2008). If a defendant fails to assert an affirmative defense and has failed to exercise due diligence, the Court has discretion to find that the defendant waived it. *Baar v. Jefferson County Bd. of Educ.*, 476 Fed. Appx. 621, 624-625 (6th Cir. 2012). "In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. Pro. 8(c)(1).

The Union filed its Answer in May 2013. Nowhere does it mention that the Union was not named on Plaintiff's EEOC charge. The only thing that even possibly *hints* at the assertion of the defense in the Answer is:

"5.    Plaintiff's claims ***may*** be barred because a meaningful post-deprivation remedy ***is*** available and all remedies must be exhausted."

(Doc. 10; PageID #76)(emphasis added). This affirmative defense, however, says nothing about Lee's failure to name the Union in his EEOC charge.[4]

---

[4] Indeed, this affirmative defense – as with nearly all the Union's affirmative defenses—appears to have been copied from The City's Answer (even the ones claiming sovereign immunity). Compare Doc. 10; PageID #76-77 and Doc. 5; PageID # 61-62. This is evidence that, when this

Further, the affirmative defense doesn't allege that Lee actually *failed* to do anything. Instead, it states that (at the time of the filing) there "is" a meaningful post-deprivation remedy available. At the time the Answer was filed, the EEOC's filing deadline had long since passed.[5] The "post-deprivation" remedy could not have referred to the EEOC because that option was not available at the time.

Moreover, several months *after* the Union's Answer was filed, the Court warned the Union that, if it wanted to raise this defense, it would have to specifically allege it:

> Defendant Local 2981 parenthetically notes that Plaintiff does not allege he named Local 2981 as a party in his EEOC charge. (Doc. #15, *PageID#* 95)("assuming Plaintiff's EEOC charge referenced Local 2981, which he has not alleged . . . .") . . . [ H ] owever, failure to exhaust administrative remedies is an affirmative defense that Defendant Local 2981's brief point does not sufficiently raise so as to justify consideration by the Court at this time. *See Lockart*, 531 Fed. Appx. at 547 ("'Failure to exhaust administrative remedies . . . is an affirmative defense, and the defendant bears the burden of pleading and proving this failure.'") . . . (Doc. 24; PageID #147).

Yet, despite this guidance from the Court, the Union has never sought leave to specifically plead this as an affirmative defense. Not until its Motion for Summary Judgment did the Union do anything else throughout this litigation to expand on or formally plead this defense. To grant summary judgment at this late stage on what is, at best, a vague piece of boilerplate would be unjust. By failing to ever specifically articulate this defense until now, Defendant has waived it.

### 2) The Court should strike the Union's fifth affirmative defense as "insufficient."

Even if this Court finds that the Union's fifth affirmative defense is applicable to this issue, the Court should strike it as being "insufficient." Fed. R. Civ. Pro. 12(f)(1). The defense

---

affirmative defense was written, it had nothing to do with Lee's EEOC filing; the language appears in both Defendants' Answers, but the City *was* named in the EEOC charge.

[5] Lee would have had to have filed his EEOC charge against the Union within 300 days of the discrimination. 29 U.S.C. § 626(d). Defendant's Answer was filed more than a year after Lee was terminated and nearly two years after the discriminatory SOG was passed.

should be stricken because it was so vaguely plead that it does not give fair notice of what the claim refers to. *Davis v. Sun Oil Co*., 148 F.3d 606, 614 (6th Cir. 1998)(Boggs, J. dissenting)(At a minimum, affirmative defenses must be stated in an intelligible manner and fairness dictates that the defense must give a plaintiff adequate notice of the nature of the affirmative defense); *Baker v. City of Detroit*, 483 F. Supp. 919, 921 (E.D. Mich. 1979)("The requirement that affirmative defenses be specifically pleaded is based on notions of fair play. A party should not have to deal with an extraneous issue in a lawsuit unless it is specifically brought to his attention"); *Joe Hand Promotions, Inc. v. Havens*, 2013 U.S. Dist. LEXIS 104962, *6-10 (S.D. Ohio July 25, 2013)(holding that an affirmative defense alleging that "the Complaint fails to join parties indispensible to the adjudication of this action" should be stricken because it "fails to identify any alleged party."); *EEOC v. Courtesy Bldg Serv., Inc.*, Case No. 3:10-cv-1911, *13-14 (N.D. Texas Jan. 21, 2011)(holding that because "failure to exhaust administrative remedies" is a condition precedent to EEO suits, it must be plead with particularity under Rule 9(a)).

In this case, the vague line of boilerplate asserted by the Union as its fifth affirmative defense bears little resemblance to the argument the Union now brings. In this circumstance, the Court should not reward the Union for failing to making the other parties and the Court aware of this argument until now. It should be stricken as insufficient.

### 3) Even if the Union has pled its affirmative defense, it does not apply here.

Plaintiff does not dispute that he did not name the Union in an EEOC charge. This, however, is not fatal to Lee's claim against the Union. Although filing with the EEOC is usually a prerequisite to filing suit against a party, "an EEOC charge filed by lay complainants should be liberally construed because they are unschooled in the technicalities of the law and proceed without counsel." *Tisdale v. Fed. Exp. Corp.*, 415 F.3d 516, 527 (6th Cir. 2005) (internal citations and quotation marks omitted); *Hall v. Hebrank*, 102 F. Supp. 2d 844, n.11 (S.D. Ohio

1999)("courts are inclined to construe the charge broadly if the claimant filed the charge without the assistance of counsel"). "Courts have, however, recognized that redress of legitimate grievances should not be barred by 'undue encumbrance by procedural requirements [...] when demanding full and technical compliance would have no relation to the purposes for requiring the procedures in the first instance.'" *EEOC v. Falls Vill. Ret. Cmty., Ltd*, 2007 U.S. Dist. LEXIS 16094, *3 (N.D. Ohio March 7, 2007) (quoting *Glus v. G. C. Murphy Co*., 562 F.2d 880, 888 (3d Cir. 1977)). And this Court recently recognized that "the Sixth Circuit has demonstrated a strong preference to allow suits by individuals complaining of discrimination who have diligently tried to satisfy the EEOC's procedural requirement, even if they are not entirely successful." *Edizer v. Muskingum Univ*., 2012 U.S. Dist. LEXIS 140010, *16 (S.D. Ohio Sept. 28, 2012).

In this case, when Lee filed his charge with the EEOC, he did so without the assistance of counsel. (Lee Dec. ¶7). Based on his discussion with the EEOC investigator, Lee believed (albeit mistakenly) that the Union *had* been included in his EEOC filing. (Lee Dec. ¶8). He was initially told that his charge included the Union. (*Id*.). Later, Lee was told by an EEOC staff attorney that the Union had not been named but that the Union could still be included as a party to the case and that it was unnecessary to name the Union. (*Id*.).

There is also an exception to the general requirement that an ADEA defendant be named in a EEOC charge—when the unnamed party has a clear identity of interest with the named party. The Sixth Circuit has developed two tests to determine whether there is an "identity of interest" between a named and an unnamed party. *Szoke v. United Parcel Service of America, Inc.,* 398 F. App'x 145, 153-54 (6th Cir. 2010). The first test asks whether "the unnamed party possessed sufficient notice of the claim to participate in voluntary conciliation proceedings" before the EEOC. *Id.* This test is clearly met in this case. Here, Mike Harris, the Union president admitted that Lee had informed him that he had filed with the EEOC. (Harris Depo. p.

81). Lee also discussed the EEOC filing with the Union's legal counsel. (Lee Dec. ¶9). Moreover, at a Union meeting shortly after he was terminated, the Union membership present all discussed that the EEOC was going to investigate and make a ruling on the matter. (Lee Dec. ¶10). Lee specifically warned the Union:

> "The problem is…that the Union basically voted for a potentially discriminatory policy. And if the EEOC rules it's discriminatory, then the Union agreed to that. So, therefore the Union could be held liable."[6] (*Id*.).

At the meeting, one Union Member indicated that "we'll settle the EEOC thing later." (*Id*.). The Union was clearly on notice of and could have chosen to participate in the EEOC conciliation process. It did not and suffered no prejudice from the fact that it was not named in the EEOC complaint. Compare *Williams v. Daifuku Am. Corp*., 2010 U.S. Dist. LEXIS 14263 (S.D. Ohio Feb. 18, 2010)(finding no "identity of interest" where there was no evidence that the unnamed party was aware of the EEOC charge); with *Joseph v. All Aerials LLC*, 2012 U.S. Dist. LEXIS 19347, *22-23 (N.D. Ohio Feb. 16, 2012)(an identity of interest shown where the unnamed party had the opportunity to state its case and was aware of the charge process as it occurred) and *Alexander v. Local 496, Laborers' Int'l Union,* 177 F.3d 394, 412 (6th Cir. 1999)("the district court's finding that [a union] had been provided with adequate notice affording it an opportunity to participate in, or at least encourage the other defendants to participate in, conciliation proceedings is not an abuse of discretion"). If there is any dispute on this point, the Court should find that there are genuine issues of material fact that cannot be resolved on summary judgment. *See Gregory v. Univ. Hosp., Inc*., 2009 U.S. Dist. LEXIS 59966, *47 (S.D. Ohio July 13, 2009).

---

[6] This meeting was recorded.

The lack of any prejudice to the Union and the City's demonstrated unwillingness to conciliate also support a finding that Lee's technical error is excused under the Sixth Circuit's second test. See *Romain v. Kurek,* 836 F.2d 241, 246 (6th Cir. 1987). If there is any dispute on this point, the court should find that there are genuine issues of material fact that cannot be resolved on summary judgment. *See Gregory v. Univ. Hosp., Inc*., 2009 U.S. Dist. LEXIS 59966, *47 (S.D. Ohio July 13, 2009).

The Union was wholly aware of the EEOC charge, and the Union cannot claim any prejudice from the simple absence of its name on a form Lee prepared without the assistance of counsel. Dismissing the Union does not serve justice, nor does it promote the purposes of the EEO laws the Union has clearly violated.

## VI.    CONCLUSION.

Even if this Court fails to grant summary judgment in Plaintiff's favor, there are still genuine issues of material fact on all four of Lee's causes of action. If this Court finds that the City of Moraine has stated a legitimate non-discriminatory reason for its terminating Lee, construing all the facts in Plaintiff's favor, a jury could certainly conclude that Lee's "insubordination" was nothing more than a pretextual excuse to fire him in retaliation for filing an EEOC charge and opposing the City's discriminatory policy. Similarly, if the Court doesn't grant judgment in Plaintiff's favor, it should find that a reasonable jury could conclude that Lee was discriminated against by being subjected to the physicals policy in violation of the ADEA and GINA. Summary judgment should not be granted in either Defendants' favor. Rather, summary judgment either should be granted in Plaintiff's favor, or all four causes of action should be set for trial.

Respectfully submitted,

/s/ Adam R. Webber_____
Adam R. Webber (0080900)
FALKE & DUNPHY, LLC
30 Wyoming Street
Dayton, Ohio  45409
Tel:     (937) 222-3000
Fax:     (937) 222-1414
Email: webber@ohiolawyers.cc
Trial Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing has been served upon the following this 12th day of November, 2014, via the Court's CM/ECF system.

EDWARD J. DOWD
DAWN M. FRICK
JOSHUA R. SCHIERLOH
Surdyk, Dowd & Turner Co., LPA
One Prestige Place, Suite 700
Miamisburg, Ohio 45342

JAMES H. GREER
TRISHA M. DUFF
Bieser, Greer & Landis, LLP
400 PNC Center
6 North Main Street
Dayton, Ohio 45402

MEGAN KATHLEEN MECHAK
Woodley & Mcgillivary LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC 20005

/s/ Adam R. Webber
Adam R. Webber (#0080900)
Attorney for Plaintiff