# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**David Lee,**

*Plaintiff,*

**v.**                                                **Case No. 3:13-cv-222**
                                                     **Judge Thomas M. Rose**

**The City of Moraine Fire Department, *et al.*,**

*Defendants.*

---

**ENTRY AND ORDER GRANTING IN PART MOTION FOR SUMMARY JUDGMENT BY PLAINTIFF DAVID LEE** (DOC 37), **GRANTING MOTION FOR SUMMARY JUDGMENT BY DEFENDANT MORAINE PROFESSIONAL FIREFIGHTERS ASSOCIATION, IAFF LOCAL 2981** (DOC. 44) **AND GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS CITY OF MORAINE FIRE DEPARTMENT, AND CITY OF MORAINE, OHIO.** (DOC. 45). **JUDGMENT IS AWARDED TO THE UNION ON PLAINTIFF'S CLAIMS AGAINST IT. JUDGMENT IS AWARDED TO THE CITY OF MORAINE FIRE DEPARTMENT ON PLAINTIFF'S CLAIMS AGAINST IT. JUDGMENT IS AWARDED TO THE CITY ON PLAINTIFF'S RETALIATION CLAIMS. THE CITY IS FOUND LIABLE ON PLAINTIFF'S ADEA AND GINA CLAIMS. THE CASE REMAINS SET FOR TRIAL ON THE QUESTION OF DAMAGES.**

---

This matter is before the Court for decision on motions by all parties for summary judgment, each asserting that it is entitled to judgment in its favor without need for a trial. As there is little dispute among the parties regarding the facts of the case, it is uniquely appropriate for summary judgment.

Plaintiff's first cause of action alleges Defendants discriminated against Plaintiff by discharging him because of his age in violation of the Age Discrimination in Employment Act, 29

U.S.C. §§ 621 *et seq*, ("AEDA") and Ohio Revised Code §§ 4112.14 and 4112.99.   Plaintiff's second cause of action alleges Defendants unlawfully requested Plaintiff's genetic information and family medical history in violation of Title II of the Genetic Information Nondiscrimination Act, 42 U.S.C. §§ 2000ff *et seq*., ("GINA").   Plaintiff's third cause of action alleges Defendant the City of Moraine and Defendant City of Moraine Fire Department1  retaliated against Plaintiff because of his protected activities in violation of the ADEA, 29 U.S.C. § 623(d), GINA, 42 U.S.C. § 2000ff-6(f), and Ohio Revised Code § 4112.02(I).2

## I.    Background

Plaintiff David Lee was a firefighter/EMT for Defendant City of Moraine Fire Department for nearly sixteen years. (Lee Aff. ¶2).   He was also a member of Defendant Moraine Professional Firefighters Association, IAFF Local 2981. (Id.)

In the early 2000's, the Moraine Local Firefighters Union, IAFF Local 2981 (the "Union") proposed physicals for members of the City of Moraine Fire Department . (Harris Dep. pp. 69, 101.)   This program only began in 2006. (Cooper Dep. p. 19.)   Since 2006, the program has gone through several revisions. (Id.) The Standard Operating Guideline was developed to be consistent with requirements of the Ohio Administrative Code for firefighters, and recommendations of the National Fire Protection Agency ("NFPA"), National Institute for Occupational Safety and Health ("NIOSH"), the Occupational Health and Safety Administration ("OSHA") and the Fire Service Joint Labor Management Wellness-Fitness Initiative. (Cooper Dep. Ex. 7, 30; Lovett Dep. pp. 23-24; Ex. 49.)

---

1  While the Complaint states that all Defendants retaliated, Plaintiff clarified that the Union was not intended to be included in this claim. Doc. 24 at 2 n.2, PAGEID 142.
2  Plaintiff's Ohio Rev. Code age discrimination claims against the Union were dismissed. Docs. 24 & 29, *Lee v. City of Moraine*, 2014 WL 1775621 (S.D. Ohio 2014).

In April 2008, Moraine Fire Department updated its requirement for health and wellness physicals denominated as "Standard Operating Guideline 100.5.13 – Health and Wellness Physicals Revised 4/7/2008". (Ex. S; Cooper Depo. p. 14-16, 139). Moraine Fire Department and the Union then adopted the 2008 Guideline through a "Memorandum of Understanding." (Id.; Harris Dep. Ex. S.) Although the Memorandum of Understanding was entered into in 2008, because the process had to be bid, it took several months for the request for proposal to be written, approved by attorneys, submitted to City Council and then sent out for bid. (Cooper Dep. Ex. 2.) Thus, physicals did not begin until 2009. (Id.)

In 2011, the Division Heads of the City of Moraine were ordered to find ways to reduce costs within their departments because the City was facing financial shortfalls. (Trick Dep. pp. 12-13.) Deputy Chief David Cooper, who spearheaded the Fire Department Health and Wellness Program, suggested that he would work with Dr. William Lovett to reduce some costs associated with the firefighters' physicals program. (Trick Dep. p. 13.) Dr. Lovett is a board certified emergency medicine physician who serves as the medical director for many Fire and EMS Departments in both Ohio and Indiana and performs physicals for others such as the City of Moraine. (Lovett Dep. pp.7-8.). In February 2011, Deputy Chief Cooper sent an email to Dr. Lovett's office requesting recommendations for the Standard Operating Guideline and ways that the City might be able to cut costs. (Cooper Dep. Ex. 7.) In response, Dr. Lovett recommended changing the Standard Operating Guideline so that a full comprehensive physical only be given to individuals over 40 and that those under 40 would complete an OSHA questionnaire, which would then be reviewed by the physician to determine if further testing was necessary. (Cooper Dep. 7.) Dr. Lovett added a question concerning family history of heart disease to the OSHA questionnaire. Doc. 37-3 at 84, PAGEID 474. Consistent with the recommendations of Dr.

Lovett, the changes were incorporated into the Standard Operating Guideline, which became effective April 1, 2011. (Lee Dep. Ex. 1.)

The Union and its members were under pressure to agree to a new collective bargaining agreement with Moraine Fire Department, due to the impending passage of Ohio's "Senate Bill 5." (Lee Aff. ¶4).   Moraine Fire Department proposed new language in Article 10, Section 5 of the proposed CBA, which read:

> It is understood and agreed that the City may establish a program to monitor employee safety and health. This program is intended to comply with the requirements set forth in OAC-4123:1-21-07(F)(1,2);  OAC-4123:1-21-02(P)(3) and the Moraine Fire Division Non-Emergency [Standard Operating Guideline] "Health and Wellness Physicals" rev. 4/1/2011. (Copper Depo. p. 146; Ex. B, p.14).

The Standard Operating Guideline 100.5.13 explicitly provides that the "program will not be punitive as the purpose of the program is to improve the health and wellbeing of the individual." (Lee Dep. Ex. A.)

At a Union meeting, Plaintiff David Lee, a member of the Union executive board had asked for a copy of the revised Guideline and was told it was unavailable. (Lee Aff. ¶4).   Lee voted against accepting the new CBA, but it was passed by a majority of the union membership. (Lee Aff. ¶4; Ex 12).

On November 23, 2011, Lee received an email sent to all firefighters explaining, "If you are under the age of 40, you only receive a partial physical which involves the questionnaire only." (Lee Aff. ¶5; Ex. D).   Lee was 43 at the time.   Lee completed the questionnaire sent to him by Dr. Lovett's office and forwarded it to Lovett's office. (Lee Aff. ¶6).   Question 1(a) on the questionnaire asks, "Is there a family history of heart disease with your parents or siblings?" (Lovett Depo. p. 85-87; Ex. F).   Lee was also advised to schedule a blood draw, consistent with

4

the Standard Operating Guideline. (Lee Ex. D.)   Although Deputy Chief Cooper reminded Lee to schedule his physical, Lee continued to miss his scheduled appointments. (Lee Ex. E.)

Lee had begun to have reservations about the legality of the 2011 Guideline.   He researched discrimination laws online and, in early 2012, Lee made an appointment with the Cincinnati EEOC office. (Lee Aff. ¶7).   During his meeting at the EEOC, Lee was told that the 2011 Guideline likely violated the ADEA and GINA. (Id.).

On January 30, 2012, Lee was scheduled for his "full" over-40 physical with Dr. Lovett. At Dr. Lovett's office, he asked that he be permitted to complete only those tests required of a firefighter under 40. (Lee Aff. ¶8).   In an email from Dr. Lovett's office to Moraine Fire Department, they described Lee's behavior as follows:

> Patient requested that he would only allow a partial physical to be performed, however, according to the Moraine FD roster, David Lee was to receive a full workup . . . (A 40 year old wellness physical). Patient agreed to only a partial exam . . .[a]lthough Moraine's contract did not allow for employees to decide between a partial and full exam . . . Patient recited that he felt according to the Ohio Administrative Code it was age discrimination to receive the full physical based on being over 40 years of age.  Throughout the exam, patient was not argumentative, but stern on his decision.

(Cooper Depo. p. 82, Ex. 24).

Although he offered to take the same minimal physical required of a firefighter under 40, Lee was told during his non-exam that Dr. Lovett's office had called Deputy Chief Cooper at Moraine Fire and confirmed that his choices were a full, over-40 physical or be deemed "Not Fit for Duty." (Lee Aff. ¶8; Trick Depo., p. 56-57).

After leaving Dr. Lovett's office, Lee returned to work.  There Lee approached his immediate supervisor, Lt. Phil Sinewe, and stated he needed to file a complaint about the physical; Sinewe told Lee that he would have to talk to Deputy Chief David Cooper. (Lee Aff. ¶9). The two

men then proceeded to meet with Cooper.   Lee explained his objections and asked Cooper what they might do to resolve his concerns. (Lee Aff. ¶9).   Cooper told Lee to "reduce his complaint to writing," and he told Lee that, by going to the EEOC, Lee "already took it out of the City's hands." (Cooper Depo. p. 75-80; Ex. 23).

Lee did as he was asked and wrote a four-page letter explaining that he objected to the 2011 Guideline as being "age discrimination" and objected that the medical questionnaire asked impermissible questions. (Cooper Depo. p. 82; Ex. 26).   When he delivered the letter to Cooper's office later that day, Cooper asked Lee why he took the complaint "out of the department" by going to the EEOC first. (Cooper Depo. p.90; Ex. 27).   Lee explained that he had not yet filed a formal EEOC complaint, and he wanted to try to first resolve it with Moraine Fire. (Lee Aff. ¶10).

During this meeting, Lee also mentioned to Cooper that the Guideline violated GINA. (Id.).   He explained that Dr. Lovett's form requested family medical history and additional screening for firefighters with a family history of prostate cancer. (Id.)   At all times when meeting with his supervisors, Lee was professional, and "firm in his convictions." (Trick Depo. p. 49-50).

Three days later, on February 2, 2012, Lee was called into a meeting with Fire Chief Anthony Trick and Lt. Sinewe.   Although he had already explained his opposition in writing, Lee's supervisors asked him about why he was fighting the physical policy. (Lee Aff. ¶11). Lee reiterated that he believed the physical policy violated GINA and "EEOC age laws." (Trick Depo. p. 68; Ex. 28). Whenever he tried to explain that he believed the laws to be illegal, however, his supervisors refused to discuss these concerns. (Trick Depo. p. 68).

Less than a week after that, Lee was again confronted about his opposition to the physical policy by Lt. Sinewe. (Ex. 29).   Sinewe gave Lee a memo that Deputy Chief Cooper had drafted. (Cooper Depo. p. 96; Ex. 29, 30).   The memo did not address any of Lee's concerns about GINA

6

or the ADEA; instead Cooper's memo defended the importance of firefighter physical fitness (a point that Lee never contested) and noted that several firefighter trade groups suggested that the frequency of some health tests should be based on age or family history. (Ex. 30).  During the meeting, Sinewe accused Lee of having a health issue that prevented him from taking his physical. (Ex. 29).  Lee denied this. (Id.).  Frustrated by Moraine Fire Department's failure to address his concerns about the legality of the physical policy, on February 8, 2012, Lee told Sinewe that he was now going to file with the EEOC. (Ex. 29; Lee Aff. ¶13).  Sinewe reported Lee's plans to Cooper. (Ex. 29).

Thus it was that on February 8, 2012, Chief Trick issued a direct order to Lee that he had 30 days to complete his physical consistent with the Standard Operating Guideline. (Lee Dep. Ex. G.) Lee was warned that if he refused to comply, he would be deemed "Unfit for Duty" and disciplined "based on [his] refusal to comply with this directive." (Cooper Depo. p. 101; Ex. G).  Lee did not complete his physical as ordered by the Fire Chief.  On March 9, 2011, City Manager Hicks advised Lee that his failure to follow the Chief's direct order was insubordination, a Group III offense, and he was placed on administrative leave pending a hearing. (Lee Dep. Ex. H.)

On February 16, 2012, Lee filed a charge with the EEOC.   In response to the instruction to list "the Employer, Labor organization, Employment Agency, Apprenticeship Committee or State or Local Government Agency that I believe discriminated against me or others," Lee listed "City of Moraine Fire Department."   Moraine Fire Department received notice of it shortly thereafter. (Lee Aff. ¶14; Ex. 32; Trick Depo. p. 73).   The EEOC charge of discrimination alleges that Lee was subjected to different job requirements because of his age in violation of the ADEA and was required to disclose genetic information in violation of GINA. (Id.).

Lee continued his opposition and did not take the full, over-40 physical within the 30 days. On the 30th day, March 9th, Lee was called into another meeting, where he was confronted by Trick, Cooper, and the Moraine City Manager, David Hicks, for over forty minutes about his refusal to take the physical. (Lee Aff. ¶15). During the meeting, Hicks and Trick again refused to discuss Lee's position that the physical policy was unlawful. Each time Lee brought up his legal objections, he was mocked by Hicks, who chided "as far as I know, you haven't been to law school," accused Lee of trying to use his "law degree," and asked Lee if he thought he was more educated than the City's attorney. (Lee Aff. ¶16). Instead Hicks told Lee, "None of us want to be sitting here… I don't want to be spending money having the [City's] Law Department research this…it's a waste of time and resources . . ." (Id.) Lee told them that he was "going to follow through with this," he was "ready to stand on [] principal," and was ready to "lose his job" over his objections to the physical program. (Lee Aff. ¶16; Ex. 39).

At the close of the meeting, Lee was placed on administrative leave without pay and charged with insubordination, which Moraine Fire Department classified as a "Group III" offense, the most serious level of offense in its disciplinary policy. (Trick Depo. p. 74-75; Ex. H).  Group III offenses are defined in the CBA as "infractions that are of a serious or possibly criminal nature." (Ex. B, p. 91).  Lee filed a grievance arguing that the level of the infraction should be lower and that his unpaid suspension violated Ohio Rev. Code §124.388, which states that, unless he has committed a felony criminal act, he must be placed on paid leave. See Ohio Rev. Code §124.388 and (Lee Aff. ¶17; Ex 36). The grievance was denied by Moraine Fire Department, which affirmed its decision because: (1) Lee did not follow the Guideline; (2) he did not make them aware of his objections in a "timely fashion"; and (3) he did not comply with the order to take the physical. (Trick Depo. p. 73-74; Ex. 37).

8

On March 9, 2012, a hearing was conducted by Police Chief Tom Schenk. Doc. 39-10, PAGEID 949-953.  Lee provided excerpts of ADEA and GINA. (Lee Aff. ¶18).  Lee also explained that the EEOC had told him that the physical policy was unlawful and that he now felt that he was being retaliated against. (Lee Aff. ¶19; Ex. 42).  When asked why he had not complied with a direct order to take the physical, Lee responded that he felt that it was an unlawful order. (Id.)  Schenk issued a memorandum recommending discipline. (Lee Dep. Ex. I.)  This was not the first time Lee had faced discipline, including discipline twice for insubordination and for harassment of a female employee. (Lee Dep. pp. 84-89.)

After the hearing, Lee decided that, in order to avoid losing his public employment, the best course of action was for him to take the physical under protest and continue to fight the policy through the EEOC. (Lee Aff. ¶20). So, on approximately March 20, 2012, Lee scheduled his over-40 physical with Dr. Lovett's office at their earliest date: March 30, 2012. (Id.). He notified Deputy Chief Cooper that he had done so. (Id.).

Moraine Fire Department fired Lee on March 28, 2014-two days before his scheduled physical. Moraine Fire Department decided that Lee could not "cure insubordination by an 'after-the-fact' attempt at compliance" and that Moraine Fire Department did not believe that Lee's "'newly scheduled exam' was anything more than another attempt to delay [his] discipline and/or continue to disrupt the operations of the Department." (Trick Depo. p. 85; Ex. 46).

He filed a second grievance, which the City denied. (Trick Depo. p. 85; Ex. 44, 46).  The Union refused to take either grievance to arbitration. (Lee Aff. ¶21).

On April 19, 2013, Lee was given a "Right to Sue" Notice by the EEOC. (Lee Aff. ¶22; Ex. 51).  Moraine Fire Department refused the EEOC's offer to conciliate. (Id.).  The EEOC found that there was "reasonable cause to believe that violations of the statute(s) occurred." (Id.).

9

Lee filed the instant case in this Court on July 9, 2013. Doc. 1. The complaint alleges that Defendants discriminated against Plaintiff by discharging him because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*, ("AEDA") and Ohio Rev. Code §§ 4112.14 and 4112.99. Plaintiff's second cause of action alleges Defendants unlawfully requested Plaintiff's genetic information and family medical history in violation of Title II of the Genetic Information Nondiscrimination Act, 42 U.S.C. §§ 2000ff *et seq*., ("GINA"). Plaintiff's third cause of action alleges Defendants retaliated against Plaintiff because of his protected activities in violation of the ADEA, 29 U.S.C. § 623(d), GINA, 42 U.S.C. § 2000ff-6(f), and the Ohio Revised Code § 4112.02(I).

A motion to dismiss filed by the Union has been granted in part. Now, all parties have filed motions for summary judgment that are ripe for review.

## II.    Standard for Summary Judgment

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 323.   The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.   It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson*, 477 U.S., at 255.   But, in ruling on a motion for summary judgment, "[a] district court is not...obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).   Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties.

**III.    Analysis**

11

**A.     Claims Against Local 2981**

Plaintiff alleges that Local Union 2981 violated GINA and the ADEA by entering into a CBA with Moraine Fire Department containing illegal provisions. See (Doc. 37-16).  Local Union 2981 counters that Plaintiff failed to exhaust administrative remedies against it.3   A condition precedent to asserting an ADEA or a GINA claim is exhaustion of administrative remedies. 42 U.S.C. §§ 626(d), 2000ff-6. See *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006); *Zipes v. Trans World Airlines*, 455 U.S. 385, 392-98 (1982); *Brown v. Gen'l Servs. Admin.*, 425 U.S. 820, 832-33 (1976). In the present case, Plaintiff failed to exhaust his administrative remedies against Local 298.

"[A] plaintiff 'must file a charge with the EEOC before filing a complaint alleging age discrimination in federal court.'" *Spengler v. Worthington Cylinders*, 615 F.3d 481, 489 (6th Cir. 2010).  Courts in the Sixth Circuit courts have held that "[t]he requirement that the plaintiff exhaust administrative remedies prior to instituting suit is intended to ensure that the Commission will have been afforded an opportunity to attempt conciliation and voluntary settlement, 'the preferred means for resolving employment discrimination disputes.'" *Parsons v. Yellow Freight Systems, Inc.*, 741 F.2d 871, 873 (6th Cir. 1984). As a result, "[f]ailure to timely exhaust administrative remedies is an appropriate basis for dismissal" of an ADEA action. *Williams v. Nw. Airlines, Inc.*, 53 Fed. App'x 350, 351 (6th Cir. 2002); see also *Oscar Mayer & Co. v. Evans*, 441 U.S. 750 (1979); *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 400-01 (6th Cir. 2008); *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002); *Sain v. Am. Red Cross*, 233 F. Supp. 2d 923, 929 (S.D. Ohio 2002).

---

3 Plaintiff asserts that the Union waived this defense by failing to plead it in answer to the complaint.  However, the Union's answer stated, "Plaintiff's claims may be barred because a meaningful post-deprivation remedy is available and all remedies must be exhausted." Doc. 10 at 6, PAGEID 76.

In the present case, Plaintiff did not exhaust his administrative remedies with respect to Local 2981. He testified that he filed an EEOC charge of discrimination relating to his claims, and that charge identified only the "City of Moraine Fire Department" as the entity discriminating against him. Doc. 39-20, PAGEID 979. Nothing in Plaintiff's charge of discrimination references the Union, or Plaintiff's position that Local 2981 discriminated against him as a result of entering into a CBA with Moraine Fire Department. (Id.)

Plaintiff contends that a rule of leniency should apply, and that the Court should excuse his failure to name the Union in his EEOC filing, as he was unrepresented when filing his EEOC claim. "[A] party must be named in the EEOC charge before that party may be sued under Title VII unless there is a clear identity of interest between the unnamed party and a party named in the EEOC charge." *Alexander v. Local 496, Laborers' Intern. Union of North America*, 177 F.3d 394, 411 -412 (6th Cir. 1999) (finding a clear identity of interests between a union local and its international parent) (quoting *Romain v. Kurek*, 836 F.2d 241, 245 (6th Cir. 1987)(finding no clear identity of interest between a temporary manager of a restaurant and the restaurant)).

In *Romain*, the Sixth Circuit adopted two tests for determining whether a party shares a clear identity of interest with another party. The first test, from the Seventh Circuit, recognizes a clear identity of interests exists when the unnamed party possesses sufficient notice of the claim to participate in voluntary conciliation proceedings. *Romain*, 836 F.2d at 245 (*Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890 (7th Cir. 1981)). The second test, from the Third Circuit, uses four factors to determine the relationship between the named and the unnamed parties at the time the charge was filed:

> (1) [W]hether the role of the unnamed party could through
> reasonable effort by the complainant be ascertained at the time of
> the filing of the EEOC complaint;

(2) [W]hether, under the circumstances, the interests of a named [parties] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

(3) [W]hether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;

(4) [W]hether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Romain*, 836 F.2d at 246 (citing *Glus v. G.C. Murphy Co.,* 562 F.2d 880 (3rd Cir. 1977)). See also

*Alexander v. Local 496, Laborers' Intern. Union of North America*, 177 F.3d 394, 411-12 (6th Cir.

1999) (finding a clear identity of interests between a union local and its international parent).

As to the first test, Plaintiff contends that the Union possessed sufficient notice of the claim to participate in voluntary conciliation proceedings because Plaintiff requested that the Union represent him in the conciliation proceedings.  While this constituted notice, and more particularly, notice of the claim against the City, it was not notice sufficient to alert the Union to participate in the conciliation proceedings as a party with interests adverse to those of Plaintiff. This factor does not weigh in Plaintiff's favor.

Neither does the first factor of the second test: without any effort whatsoever, Plaintiff should have known the role of the unnamed party at the time of the filing of the EEOC complaint. Plaintiff was a member of the Local Union 2981 executive board that negotiated the provisions Plaintiff now decries.   Neither does the second factor of the second test weigh in Plaintiff's favor. The interests of the City are not so similar to the Union's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings.   The City and the Union proffer alternative explanations of how the

14

examination requirements Plaintiff decries came to be. The Union's absence from the conciliation proceedings prejudice the Union, in that, were it a participant, the provisions Plaintiff decries could potentially have been re-negotiated, fulfilling the intended purpose of the conciliation proceedings, and saving the need for a portion of this litigation. Unlike in situations such as those involving a local union being named, but not the international union, or a subsidiary corporation and not the parent corporation, the Union has in no way represented to Plaintiff that its relationship with the Plaintiff is to be through the named party. Accordingly, Plaintiff has not met the conditions precedent to filing suit against Local Union 2981, and the Court cannot find a clear identity of interests that would allow it to forgive Plaintiff's failure. Plaintiff's claims against the Union will be dismissed.

**B.      Claims Against the Moraine Fire Department**

Plaintiff has named the Moraine Fire Department as a party. Fire departments "are not *sui juris* and, therefore, cannot sue or be sued. They are merely sub-units of the municipalities they serve." *Lathan v. City of Cleveland*, 2012 WL 1708762 (N.D. Ohio May 15, 2012) citing *Hicks v. City of Barberton*, 2011 WL 3022089 (N.D. Ohio July 22, 2011). Accordingly the claims against the Moraine Fire Department will be dismissed.

**C.      Claims Against the City Under Ohio Revised Code § 4112.14(C)**

Plaintiff's First Cause of Action in his Complaint is a claim that he was wrongfully terminated in violation of the ADEA and Ohio Rev. Code §§ 4112.14 and 4112.99. (Doc. #1, Complaint ¶¶19- 25.) The Court previously held that "[i]n light of the grievance and arbitration procedures set forth in the CBA under which Plaintiff was employed, his claims under Ohio Rev. Code §§ 4112.14 and 4112.99 are barred by the arbitration exhaustion provision set forth in § 4112.14(C)." [Doc. #24, p. 14]. "Plaintiff had the opportunity to arbitrate pursuant to the terms of

the CBA and failed to do so, Ohio Rev. Code § 4112.14(C) bars him from bringing claims under Ohio Rev. Code §§ 4112.14 and 4112.99." [Doc #24, p. 14-15].

The section at issue Rev. Code § 4112.14(C) applies to employers.   Thus, the analysis is the same with respect to the City.   Plaintiff had the opportunity to proceed through the grievance process and ultimately arbitrate the issue, but did not do so.   Thus, pursuant to R.C. § 4112.14(C), his claim is barred and summary judgment will be granted.

## D.        Plaintiff's ADEA Claim Against The City

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge ... or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).   The Complaint asserts that the City "discriminated against Plaintiff by discharging [him] and otherwise adversely impacting his compensation, terms, conditions, and privileges of employment, because of his age in violation of the ADEA…." Doc. 1 at 5, PAGEID 5.   "Specifically, Defendants established [Standard Operating Guideline 100.5.13 as a term and condition of employment, which, on its face, required Plaintiff to undergo invasive medical testing because he was over the age of forty." (Id.)

As the City points out, to prevail on a claim under the ADEA, it is not sufficient for the plaintiff to show that age was a motivating factor in the adverse action; rather, the ADEA's "because of" language requires that a plaintiff "prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009) (citing *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 141–43, 147 (2000)).   For an employer to take an adverse action "because of age" means "'that age was the "reason" that the employer decided to act.'"

16

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2527 (2013) (quoting *Gross*, 557 U.S. at 176) (extending *Gross* to retaliation claims under Title VII).

Thus, the ADEA does not authorize mixed-motive age discrimination claims, since the ordinary meaning of ADEA's requirement that employer took adverse action "because of" age is that age was the "reason" that employer decided to act; therefore, to establish a disparate-treatment claim, a plaintiff must prove that age was "but-for" cause of employer's adverse decision, and burden of persuasion does not shift to employer to show that it would have taken the action regardless of age, even when plaintiff has produced some evidence that age was one motivating factor in that decision. Age Discrimination in Employment Act of 1967, § 4(a)(1), 29 U.S.C.A. § 623(a)(1).

The City contends that the testimony is not disputed that the Standard Operating Guideline was revised to the 2011 version based upon the recommendation by Dr. Lovett. (Cooper Dep. p. 23.)  According to the City, "[T]he City did not change the Standard Operating Guideline 'because of' the fact that it desired treating those over 40 differently.  Rather, the Standard Operating Guideline was changed 'because of' the recommendation of Dr. Lovett, which was made 'because of' the fact that in his professional experience, the age of forty is a medically recognized risk factor for the firefighting profession as it relates to cancer and cardio-pulmonary disease." Response, Doc. 45 at 5, PAGEID 1257 (citing Lovett Depo. Ex. 50, ¶5.)  At the same time, heightened job requirements for those above the age of 40 is something federal law forbids. Cases upholding mandatory retirement ages are inapposite, as it is not possible to treat those above and below the required retirement age in that circumstance.  Here, the conditions and requirements of the job affect some more than others, but do affect all, and not all differences in

17

affects are determined by age. The City can require testing of all firefighters, and federal law requires it.

Similarly, the City points out that "most insurance companies will pay for preventive colonoscopy testing starting at age 50, but will not pay for the same test before that age unless another risk factor is documented." (Id. at 6, PAGEID 1258) This is generally permitted, even when provided by the employer, as such tests are normally voluntary wellness programs the employee is free to forego. Nor are insurance benefits conditions of continued employment. Lee was not free to forego his physical; he was fired for refusing it.

The City provides copious evidence and case law that that testing and histories of coronary disease are bona fide job requirements of firefighters, but offers no evidence or case law as to why it is not a bona fide job requirement for firefighters of all ages. For example, the City asserts that testing involves inevitable false positives and "a false positive could create additional risk to younger patients, causing them to endure additional, more invasive testing such as a stress echo with ultrasound machines or a nuclear stress test where they must endure radioactive dye injected into them." (Id. (citing Lovett Dep. p. 47.)) However, this is true of those over 40 as well. In the firefighter "buddy system" the City describes, where firefighters rely upon each other in dangerous situations, the buddy of one who may have manifested a false positive is just as likely to want their buddy to undergo the invasive testing necessary to determine whether he is capable of fulfilling his buddy duties whether he is over 40 or under 40.

The City has discriminated against Lee by requiring him to undergo job requirements not required of those under 40. While physicals are a bona fide job requirement, differentiations in physicals required of those older and younger than age 40 are not. Plaintiff is entitled to summary judgment as to liability regarding these claims, as requested in his motion for summary judgment.

**E.      Plaintiff's GINA Claims**

The Complaint alleges, "Defendants unlawfully requested Plaintiff's genetic information and family medical history in violation of GINA, 42 U.S.C. §§ 2000ff-1(b) and 2000ff-3(b)." Doc. 1 at 6, PAGEID 6.   "Specifically, [Standard Operating Guideline] 100.5.13 required Plaintiff to submit to an invasive medical examination that would have provided Defendants with Plaintiff's genetic information and family medical history." Id.

In 2008, Congress passed the Genetic Information Nondiscrimination Act. 42 U.S.C. § 2000ff, et seq.   The text of GINA is clear:

> b) Acquisition of genetic information
>
> **It shall be an unlawful** employment practice for an employment agency **to request**, require, or purchase **genetic information** with respect to an individual or a family member of the individual ***except—***
>
>> (1) where an employment agency inadvertently requests or requires family medical history of the individual or family member of the individual;
>>
>> (2) where—
>>
>>> (A) health or genetic services are offered by the employment agency, including such services offered as part of a wellness program;
>>>
>>> (B) the employee provides prior**, knowing, voluntary, and written** authorization;
>>>
>>> (C) only the employee (or family member if the family member is receiving genetic services) and the licensed health care professional or board certified genetic counselor involved in providing such services receive individually identifiable information concerning the results of such services**; and**
>>>
>>> (D) any individually identifiable genetic information

19

> provided under subparagraph (C) in connection with the services provided under subparagraph (A) is only available for purposes of such services and shall not be disclosed to the employer except in aggregate terms that do not disclose the identity of specific employees;

42 U.S.C. 2000ff-2(b)(emphases added).

Genetic information is defined as "information about-(i) such individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual." Id. § 2000ff(4)(A).   In violation of 42 U.S.C. § 2000ff(4)(A)(iii), Question 1(a) on Dr. Lovett's questionnaire asked, "Is there a family history of heart disease with your parents or siblings?" (Lovett Depo. p. 85-87; Ex. F).

The City protests that it did not request genetic information from Lee.   The City points out that Dr. Lovett added the family history of heart disease question to an OSHA questionnaire, as if this absolves the City of responsibility for Dr. Lovett's actions.   Doc. 40 at 19, PAGEID 999; doc. 45 at 13, PAGEID 1266.   The City's position is thwarted by GINA's definition of "employer" as a person employing a sufficient number of employees, and "any agent of such a person." 42 U.S.C. § 2000ff(2)(B)(i) (adopting the definition of employer in Title VII, 42 U.S.C. § 2000e(b)); 42 U.S.C. § 2000e(b).

The City cites to a series of cases concerning individual liability of an agent, attempting to prove that an employer is not responsible for the actions of an agent, when the cases cited only support the conclusion that the agent does not face individual liability as an employer. Doc. 45 at 13, PAGEID 1266 (citing *Burdi v. Uniglobe Cihak Travel, Inc.*, 932 F. Supp. 1044, 1047 (N.D. Ill. 1996); *E.E.O.C. v. AIC Security Investigations*, 55 F.3d 1276, 1279–80 (7th Cir. 1995) and *Wathen*

*v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir.1997)).   That question is not raised in this case, as

Dr. Lovett has not been sued.

The City's position that it is not responsible for Dr. Lovett's actions is further eroded by

The City's failure to comply with the implementing regulations:

> [a] covered entity **must** tell health care providers not to collect
> genetic information, including family medical history, as part of a
> medical examination intended to determine the ability to perform a
> job, and **must** take additional reasonable measures within its control
> if it learns that genetic information is being requested or required.
> Such reasonable measures may depend on the facts and
> circumstances under which a request for genetic information was
> made, and may include no longer using the services of a health care
> professional who continues to request or require genetic information
> during medical examinations after being informed not to do so.

29 C.F.R. §1635.8(d)(emphasis added).

The City also repeatedly attempts to establish that the request of genetic information

qualifies under the wellness program exception of 42 U.S.C. § 2000ff-2.   Critical to this assertion

is that the information is voluntarily given, or more exactly that "the employee provides prior,

knowing, voluntary and written authorization." 42 U.S.C. § 2000ff-2(b)(2)(B).   The City attempts

to meet this burden by detailing how Lee, as a member of the Union executive board, signed off on

the CBA, and voluntarily completed the questionnaire Dr. Lovett provided. Doc. 45 at 14,

PAGEID 1267 (citing Lee Depo. Ex. B and Depo. 51-51, 54).

The implementing regulations stipulate, however, that this written authorization must be

acquired by means of an authorization form:

> This requirement is **only** met **if** the covered entity uses an
> authorization form that:
>
> > (1) Is written so that the individual from whom the genetic
> > information is being obtained is reasonably likely to
> > understand it;

>(2) Describes the type of genetic information that will be obtained and the general purposes for which it will be used; and
>
>(3) Describes the restrictions on disclosure of genetic information;

29 C.F.R. § 1635.8(b)(2)(i)(B) (emphases added).

The City does not come under the voluntary written authorization exception.   The City's agent did request genetic information.   Plaintiff is entitled to judgment as to liability on Plaintiff's GINA claim.

## F.    Retaliation Claims

Plaintiff alleges two different claims of retaliation. One claim for retaliation is an allegation that the City retaliated against Plaintiff for participation in the protected activity of filing a charge with the EEOC. The other is under the opposition clauses of ADEA and GINA. Doc. 1, at 7,  ¶¶ 31, 32.

Although Plaintiff claims to have spoken to the EEOC sometime in 2011 about Standard Operating Guideline, he did not actually file a charge with the EEOC until February 16, 2012, over a week after Chief Trick gave Lee an order that he was required to complete his physical in thirty days or face discipline. (Lee Depo. Ex. A, G.) That is not the proper sequence of events to demonstrate that his participation in a protected activity caused an adverse employment action. See *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 676 (7th Cir. 2011) (concluding that, where two supervisors had discussed ways to discipline an employee before the employee engaged in protected activity, the employee could not establish causation although she was forced to resign soon after her protected activity).   As the Sixth Circuit has explained, temporal proximity is sometimes sufficient to establish causation because no other evidence of causation

22

exists when employers immediately retaliate against employees after learning of protected activity. See *Mickey v. Zeider Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008).   That reasoning does not justify finding causation where an employee suspects he may be disciplined in the future for his present actions, engages in protected activity in spite of possible future imposition of discipline, and the employer later imposes the discipline the employee thought would be imposed. See *Leitgen*, 630 F.3d at 675-76 ("When a retaliation claim is based on suspicious timing, the order of events is even more important than the time between them; the theory doesn't work if the retaliatory act precedes the protected activity." (internal quotation omitted)); see also *Dansler–Hill v. Rochester Inst. of Tech.*, 764 F. Supp. 2d 577, 582 (W.D.N.Y. 2011).

"[E]vidence that the employer had been concerned about a problem before the employee engaged in protected activity undercuts the significance of the temporal proximity." *McBroom v. Barnes & Noble Booksellers, Inc.*, 747 F. Supp. 2d 906, 920 (N.D. Ohio 2010); *Sosby v. Miller Brewing Co.*, 415 F. Supp.2d 809, 822 (S.D. Ohio 2005) (quoting *Smith v. Allen Health Sys.*, 302 F.3d 827, 834 (8th Cir. 2002)).   Deputy Chief Cooper spoke with Lee about getting his physical scheduled on multiple occasions.   Lee failed to show up for his scheduled blood draw. (Lee Dep. pp. 46-47.)   As early as December 27, 2012, Deputy Chief Cooper asked Lee about missing his prior appointments and getting it scheduled. (Lee Dep. Ex. E.)   After Lee refused to complete the full physical, the Chief issued him a direct order to do so.   The requirement by the Chief to take the physical and the consequences for not following the Chief's order was set forth in the February 8, 2012 memorandum to Lee. (Lee Dep. Ex. G.)   The fact that the City's actions were consistent with what they advised Lee of prior to him filing a charge is not additional evidence to establish that the filing of the charge was the "but for" reason for the ultimate actions of the City in

suspending and ultimately terminating Lee's employment. *University of Texas Southwestern Medical Center v. Nassar*, --U.S.--, 133 S. Ct. 2517 (2013).

Moreover, the City has articulated a technically legitimate non-retaliatory reason for its actions and has demonstrated an honest belief in its proffered reason. [Doc. # 40, 9-10.]   The City asserts that Lee was terminated for insubordination, which in the context of a duty-bound organization such as a fire department, can justify a termination for insubordinately standing on one's legal and even constitutional rights.   The Sixth Circuit has "adopted the honest belief rule, reasoning that it is not in the interests of justice for [the court] to wade into an employer's decision-making process." *Donald v. Sybra*, Inc., 667 F.3d 757, 763 (6th Cir. 2012) citing *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598–99 (6th Cir. 2007).   "It is instead the employer's belief, and whether it is informed and nondiscriminatory, with which [courts] are concerned." *Id.*   The Sixth Circuit does not require that the employer arrived at its decision in an "optimal" matter, but that it "reasonably relied on the particularized facts that were before it at the time the decision was made." Id. citing *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (internal quotation marks omitted).   Plaintiff cannot establish pretext if the City held an honest belief in its proffered reason.

In the words of the Supreme Court, "[s]ociety would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement." *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979).4  See also *United States v. Kisala*, 64 M.J. 50, 51–52 (C.A.A.F. 2006) ("Long ago this Court recognized the foundational principle of

---

4 "While a police officer does not have a constitutional right to disobey an order based on his or her own opinion of law, an officer who is disciplined for questioning the legality of a superior's orders is not entirely without a remedy. The officer typically has recourse to union grievance procedures or other employment-related legal channels. See, e.g., *Homar v. Gilbert*, 63 F. Supp. 2d 559, 564, 570 n.11 (M.D. Pa. 1999)" *Armbruster v. Cavanaugh*, 410 Fed. App'x 564, 568, 2011 WL 339534, *3 n.10 (3rd Cir. 2011)

military discipline: 'Fundamental to an effective armed force is the obligation of obedience to lawful orders.' Reflecting the authority of this principle, an order is presumed to be lawful, and a subordinate disobeys an order at his own peril."). See also *Armbruster v. Cavanaugh*, 410 Fed. Appx. 564, 568, 2011 WL 339534, *3 (3rd Cir. 2011).   The Sixth Circuit has recognized the applicability of this principal to fire departments. *Fullen v. City of Columbus*, 514 Fed. App'x 601, 606, 2013 WL 518417, *3 (6th Cir. 2013) ("the City demonstrated the [Columbus Fire Department] to be a duty-bound organization wherein following orders has particular importance. While Fullen appears to have received particularly harsh punishment for his insubordination, he directly disobeyed the Chief, even after the Chief confronted him and made clear that Fullen's conduct, if continued, would constitute insubordination.").

Certainly this principle has limits.   "It is not that we cannot conceive of a factual scenario involving a punishment imposed for disobeying a blatantly illegal order for which substantive due process might appropriately offer redress—for example, an order to shoot to kill peaceful demonstrators.   But that is not this case." *Armbruster v. Cavanaugh*, 410 Fed. App'x 564, 567, 2011 WL 339534, *3 n.8 (3rd Cir. 2011).   Neither is this that case.

There is no genuine issue of material fact but that Lee was terminated for insubordination, and a third offense at that.   However this situation only heightens how untenable is the City's position with regard to the GINA claim that Lee voluntarily divulged genetic information.   At the same time, in the ADEA claim, Lee's only choice was to comply with the illegal order to undergo the over-40 medical exam in violation of ADEA, and then file suit.   But the City cannot have it both ways, insisting that Lee voluntarily complied with one directive, but was insubordinate in not following the other.

**VI.    Conclusion**

25

Because the City of Moraine Fire department is not *sui juris*, judgment is awarded to the Fire Department on all claims against it and this part of Motion For Summary Judgment by Defendants City of Moraine Fire Department, and City of Moraine, Ohio, (Doc. 45), is **GRANTED**.  Because Plaintiff did not exhaust administrative remedies against Moraine Professional Firefighters Association, IAFF Local 2981, judgment is awarded to it on all claims and Motion for Summary Judgment of Defendant Moraine Professional Firefighters Association, IAFF Local 2981, (Doc. 44), is **GRANTED**.

Because Lee was required to undergo a medical exam as a condition of employment on account of his being over 40 years of age and the City has proffered no evidence that exams only for those above the age of 40 is a bona fide job qualification, judgment is awarded to Lee on his ADEA claim.  Because the City gathered genetic information, including family medical history, as part of a medical examination intended to determine the ability to perform a job, judgment on the question of liability on the claim of violation of GINA is awarded to Lee.  With regard to Plaintiff's ADEA and GINA claims, Motion for Summary Judgment by Plaintiff David Lee, (Doc 37), is **GRANTED** and Motion for Summary Judgment by Defendants City of Moraine Fire Department, and City of Moraine, Ohio, (Doc. 45), is **DENIED**.  Because Lee has no direct evidence that he was terminated in retaliation for legally protected activity, and has no evidence that the City's proffered reason of insubordination for terminating him was pretextual, judgment on Lee's claims of retaliation is awarded to the City.  On the retaliation claims, Motion for Summary Judgment by Plaintiff David Lee, (Doc 37), is **DENIED**, and Motion for Summary Judgment by Defendants City of Moraine Fire Department, and City Of Moraine, Ohio, (Doc. 45), is **GRANTED.**

26

The trial scheduled to commence on April 27, 2015 in the captioned case will go forward to determine the question of damages.

**DONE** and **ORDERED** in Dayton, Ohio, on Tuesday, March 3, 2015.

s/Thomas M. Rose

_____

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE