IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **DAVID LEE,** | : | **CASE NO. 13-CV-222** |
| Plaintiff, | : | |
| **vs.** | : | **JUDGE THOMAS M. ROSE** |
| | : | |
| **THE CITY OF MORAINE FIRE** | : | **MAGISTRATE JUDGE** |
| **DEPARTMENT,** *et al.*, | : | **SHARON L. OVINGTON** |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**MEMORANDUM IN OPPOSITION TO DEFENDANT CITY OF MORAINE'S
MOTION IN LIMINE TO PRECLUDE THE INTRODUCTION OF EVIDENCE
AND TESTIMONY REGARDING LOST WAGES AND BENEFITS (Doc. 54)**

    Defendant, the City of Moraine ("Moraine"), seeks to limit the introduction of evidence and testimony relating to Plaintiff David Lee's claim for compensatory, economic damages: namely back pay, front pay, and benefits.[1] For the reasons stated below, Moraine's motion should be overruled.

    In its March 3, 2015 Order, the Court held, *inter alia*, that Moraine had subjected Lee to a discriminatory policy that violated both the ADEA and GINA. (Doc. 52). The Court found that Lee was discriminated against by Moraine. But, the Court held, Lee's termination did not

---

[1] Although this motion was originally captioned as a Motion in Limine, at the March 26, 2015 pre-trial conference the Court indicated its view of this motion as more akin to a motion under Fed.R.Civ.Pro. 56 to determine whether Plaintiff may claim these damages. Plaintiff therefore requests that this Court continue to apply the strict standard of Rule 56(c): assuming Lee's evidence as true and drawing all reasonable inferences in favor of Lee. (Doc. 52; PageID # 1392-93).

1

constitute a second, discrete offense of discrimination: retaliation. *Id*. Moraine argues that this second holding absolves it of any liability caused to Lee because of its discrimination. Moraine's argument is unpersuasive for two reasons.

### A. *But for* Moraine's Discriminatory Policies, Lee Would Still be Employed as a Moraine Firefighter.

Moraine would have this Court view this case as a situation where an employee is subjected to unlawful discrimination or harassment and then terminated for some other, wholly unrelated reason. That is not this case. Lee's termination occurred as a direct and proximate result of Moraine's discriminatory policy; it cannot be reasonably argued otherwise. While this Court has held that Lee's termination was not *retaliation* for his refusal to comply with the unlawful policy; that is not the same as a finding that he did not suffer economic damages as a direct and proximate result of Moraine's discrimination.

A simple hypothetical puts this question into perfect focus: What if Moraine had never chosen to violate the ADEA and GINA and never passed the discriminatory policy? The answer is self-evident: Lee would still be a Moraine firefighter. What if Moraine had repealed or revised its discriminatory policy when Lee (correctly) warned them that the policy was discriminatory? Lee would still be a Moraine firefighter. What if Moraine had chosen not to force Lee to comply with its discriminatory policy until the matter was determined by this Court? Lee would still be a Moraine firefighter.

Moraine will surely respond: Lee's termination wasn't a direct result of the discriminatory policy; it was a result of his insubordination. But this argument ignores the obvious truth: Lee's "insubordination" was inextricably intertwined with the discriminatory policy. Lee became "insubordinate" only when he refused to follow an illegal and discriminatory policy. To trace Moraine's argument to its inevitable conclusion, Moraine would

2

tell this Court that, rather than refuse to follow an illegal and discriminatory order; Lee should have willingly disclosed his genetic information and subjected himself to a humiliating and intrusive physical examination simply because he was over 40.  And he should have done it in 2012, again in 2013, again in 2014, again in 2015, and so on—until Moraine's policy was eventually enjoined by this Court.  In other words (according to Moraine's argument) a person who is subjected to a discriminatory policy should just lie down and keep accepting the discrimination until a federal court tells the employer to stop.  And if the employee takes any action to stop the discrimination, the consequences that follow from that are their own doing, not the employer's.  This cannot be, and is not, the law.

This Court's finding that Moraine's policy is unlawful vindicates Lee; he was right to challenge the policy and Moraine never should have implemented it or enforced it.  A jury could determine that Lee suffered economic damages as a direct and proximate result of Moraine's unlawful discrimination.  But for Moraine's unlawful policy and its refusal to repeal or reconsider it, Lee would still be a Moraine firefighter.

  B. <u>This Court Must Award Back Pay and Reinstatement or Front Pay as a Matter of Equity And To Make Plaintiff Whole</u>.

In addition to the obvious fact that Lee only suffered economic damages because of Moraine's discriminatory policy, this Court must also award damages to Lee as a matter of equity.

In *Albermarle Paper*, the Supreme Court established the guiding principles by which the federal courts should consider damage awards for discrimination.  The Court stated that the federal district courts must exercise their discretion and judgment "guided by sound legal principles."  *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975).  A District Court's discretion is equitable and should be designed to effectuate Congress's intent to both eradicate

3

discrimination and to ensure "complete justice". *Id*. at 416-18.  A court must provide a remedy that both eliminates the discrimination and "bar[s] like discrimination in the future." *Id*. at 418 (citing *Louisiana v. United States*, 380 U.S. 145, 154 (1965)).  The Court must also strive "to make the victims of unlawful discrimination whole by restoring them, so far as possible . . . to a position where they would have been were it not for the unlawful discrimination." *Oakley v. City of Memphis*, 566 Fed. Appx. 425, 429 (6th Cir. 2014)(quoting *Ford Motor Co. v. EEOC*, 458 U.S. 219, 230 (1982)).

Once there is a finding of unlawful discrimination, back pay and reinstatement should be denied <u>only</u> if it would "frustrate the central statutory purposes manifested by Congress . . . of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle*, at syllabus; *Oakley*, at 429 ("Where a court finds that invidious discrimination has taken place in violation of Title VII, the district court has broad discretion to fashion remedies to make the victims whole, including discretion to award back pay."); *Suggs v. ServiceMaster Educ. Food Management*, 72 F.3d 1228, 1234 (6th Cir. 1996) ("The purpose of front pay . . . is to put an injured party in the same position the party would have occupied in the absence of the discrimination").

In *Albermarle*, the Court further warned that, if a court is faithful to these Congressional mandates, then there will be "little room for the exercise of discretion *not* to order reimbursement." *Id*. at 417 (emphasis added)(quoting *Mitchell v. DeMario Jewelry*, 361 U.S. 288, 292 (1960); *Oakley v. City of Memphis*, 566 Fed. Appx. 425, 429 (6th Cir. 2014)("Back pay is an equitable remedy that is presumptively favored in employment discrimination cases."); *Suggs v. ServiceMaster Educ. Food Management*, 72 F.3d 1228, 1233 (6th Cir. 1996)("Plaintiffs who prove discrimination in violation of Title VII are entitled to reinstatement, unless

exceptional circumstances make the chances for a satisfactory employment relationship unlikely.").

Back pay has an obvious connection with Congress' purpose, and this case perfectly illustrates why it is so necessary. "If employers faced only the prospect of an injunctive order, they would have little incentive to shun practices of dubious legality. It is the reasonably certain prospect of a back pay award that 'provide[s] the spur or catalyst which causes employers and unions to self-examine and to self-evaluate their employment practices and to endeavor to eliminate [discrimination].'" *Id*. at 417-18 (quoting *United States v. N.L. Industries, Inc.*, 479 F. 2d 354, 379 (8th Cir. 1973)).

Here, Moraine submits that all it should suffer for its unlawful discrimination is, at worst, an injunction making it repeal its discriminatory policy, nominal damages for Plaintiff's pain and suffering, and Plaintiffs' attorney fees.  If those are the only consequences for its conduct, what message does the Court send?  If that were the only consequence for Moraine's illegal act, this Court would clearly broadcast: an employer can pass an egregious and facially discriminatory policy, fire anyone who opposes the discrimination, and, at worst after years of federal litigation—any employee who stands up to the policy will *maybe* get their attorney's fees paid for and their (former) employer will be forced to withdraw the policy.  This would be a Pyrrhic victory for victims of facially discriminatory policies.  Without hope of ever recovering their lost wages, what reasonable employee would ever then dare risk losing their job to oppose even obvious discrimination?

Moraine's citation to *Grimes v. City of Fort Valley*, 773 F. Supp 1536, 1538 (M.D. Ga. 1991) is as unhelpful as it is confusing to the issue in this case.  In what the *Grimes* court called a "most unusual" case, the plaintiff successfully proved that he was denied a transfer because of

his age. *Id.* The job to which plaintiff sought transfer, however, paid *less* than what he made in his present job. *Id*. Consequently, the *Grimes* court held, back pay made no sense. Similarly, the job to which he wanted to transfer had been slated for elimination. *Id*. Therefore, the court held, instatement would only make the plaintiff worse off and reasoned that the best it could do for the plaintiff would be to give him nominal damages, attorney fees, and "leave [plaintiff] where he is." *Id*. at 1539. Obviously Lee's case is far different than *Grimes*; Lee wants reinstatement back to a position that pays more than he presently makes and back pay for the self-evident economic damage.

Here, equity demands that this Court order that back pay and reinstatement (or front pay) are appropriate damages.

C. Conclusion.

If this Court finds that back pay and/or front pay are proper categories of damages that flow as a direct and proximate result of Moraine's discrimination, then this matter may be submitted to the jury to determine what amounts are proper. If, however, this Court finds that front pay, reinstatement, and/or back pay should be awarded as a matter of equity, then this matter may be determined without a jury trial. See Albemarle Paper Co. v. Moody, 422 U.S. 405, 443, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975) (Rehnquist, J., concurring)("To the extent, then, that the District Court retains substantial discretion as to whether or not to award back pay notwithstanding a finding of discrimination, the nature of the jurisdiction which the court exercises is equitable, and under our cases neither party may demand a jury trial."); *Bledsoe v. Emery Worldwide Airlines, Inc.*, 635 F.3d 836, 844 (6th Cir. 2011)(quoting *Albemarle* and holding, generally, that jury trials are for employment plaintiffs pursuing money damages and equitable relief is for the court to determine).

For the foregoing reasons, Defendant's motion to bar Plaintiff from presenting evidence of back pay and reinstatement/front pay must be overruled.

                Respectfully submitted,

                */s/ Adam R. Webber*_____
                Adam R. Webber (0080900)
                FALKE & DUNPHY, LLC
                30 Wyoming Street
                Dayton, Ohio  45409
                Tel:    (937) 222-3000
                Fax:   (937) 222-1414
                Email: webber@ohiolawyers.cc
                Trial Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing has been served upon the following this 3rd day of April, 2015, via the Court's CM/ECF system.

EDWARD J. DOWD
DAWN M. FRICK
JOSHUA R. SCHIERLOH
Surdyk, Dowd & Turner Co., LPA
One Prestige Place, Suite 700
Miamisburg, Ohio 45342

JAMES H. GREER
TRISHA M. DUFF
Bieser, Greer & Landis, LLP
400 PNC Center
6 North Main Street
Dayton, Ohio 45402

MEGAN KATHLEEN MECHAK
Woodley & Mcgillivary LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC 20005

                /s/ Adam R. Webber
                Adam R. Webber (#0080900)
                Attorney for Plaintiff